Roger CADY, James Bergo and Thomas Jundt, d/b/a Cady, Bergo, Jundt Enterprises, L.N. Fletcher and Roberta Fletcher, and Roger Behm, Plaintiffs,

Webber Barlow Stores, Incorporated, Plaintiff and Appellant,

v.

NORTH DAKOTA DEPARTMENT OF TRANSPORTATION and City of Minot, Defendants and Appellees.

Civ. No. 910044.

Supreme Court of North Dakota.

June 25, 1991.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellant; argued by Orlin W. Backes. Appearance by Robert A. Wheeler.

Nevin Van de Streek (argued), City Atty. and Sp. Asst. Atty. Gen., Eaton, Van de Streek & Ward, Minot, for defendants and appellees.

ERICKSTAD, Chief Justice.

Webber Barlow Stores, Inc., (Barlow) appeals from the decision of the District Court for the Northwest Judicial District dated January 17, 1991, dismissing Barlow's action against the North Dakota Department of Transportation and the city of Minot (defendants). We reverse and remand.

In the fall of 1978, the new Highway 2 and 52 Bypass (Bypass) was opened in Minot, North Dakota. The section of the Bypass in question runs primarily east and west and is a four-lane, semi-controlled access, divided highway. The Bypass is intersected by Tenth Street, a road which extends primarily north and south. Barlow owns property which is located in the northeast corner of the Tenth Street and Bypass intersection. The northern bound-

ary of Barlow's property is Twentieth Avenue, the former Highway 2 and 52 Bypass, which runs roughly parallel to the section of the Bypass in question.

Initially, the intersection of the Bypass and Tenth Street was controlled by stop signs. In 1980, the city of Minot installed temporary barriers to prevent left-hand turns off of Tenth Street onto the Bypass. The result of this action was to allow vehicles traveling in either direction on the Bypass to access and travel in either direction on Tenth Street, while traffic traveling south on Tenth Street was forced to travel west on the Bypass and traffic traveling north on Tenth Street was forced to travel east on the Bypass. No through traffic on Tenth Street was thereafter permitted. In late 1982, or early 1983, the temporary barriers were made permanent. Finally, in the fall of 1988, the north half of the intersection was completely sealed off and only right-hand turns onto and off of the Bypass on the south part of the intersection remained. Direct access from Barlow's property to the Bypass, at the intersection of Tenth Street and the Bypass, has therefore been eliminated.

Presently, Barlow's most direct route to the Bypass is to first access Twentieth Avenue, which abuts the north edge of the property. Once on Twentieth Avenue, Barlow may travel either east to Broadway [Highway 83] or west to Sixteenth Street, a distance of approximately six blocks in either direction. Both Broadway and Sixteenth Street intersect the Bypass and allow complete access to and from the Bypass. The intersection of Broadway and the Bypass is a cloverleaf interchange. The intersection of Sixteenth Street and the Bypass is, in the words of the defendants "a bizarre and bewildering array of access roads which presents all the good order of an upset bowl of spaghetti."

■ We have previously recognized that a property owner has a right of access to abutting highways and streets. *E.g., Yegen v. City of Bismarck,* 291 N.W.2d 422, 424 (N.D.1980). Section 24–01–01.1(35), N.D.C.C., defines the "right of access" as " 'the right of ingress to a highway from abutting land and egress from a highway to abutting land.' " *See also, Yegen,* 291 N.W.2d at 424. The "right of access" is a private right which entitles the abutting land owner just compensation if that right is impaired or destroyed. *Id.* However, the property owner's "right of access" to an abutting highway or street

"[d]oes not entitle the landowner to direct access at any and all points between the subject property and the highway. The State, in the exercise of its police powers, may impose regulations and restrictions, or even prevent access at certain points, where such control is done in the interests of public safety. Thus, while an abutter has a right to access to an adjoining highway, such right is subject to the superior interests of the state. *King v. Stark County, supra.* [66 N.D. 467, 266 N.W. 654 (1936) ]."

*Filler v. City of Minot,* 281 N.W.2d 237, 239 (N.D.1979).

■ The initial determination of whether or not there has been a taking of or damage to private property is a question of law. *Id. United Power Association v. Heley,* 277 N.W.2d 262, 267 (N.D.1979); *Guerard v. State,* 220 N.W.2d 525, 527 (N.D.1974). Generally, once there has been a determination that a private property right has been disturbed the only remaining question for the trier of fact is the extent of the damage. *Filler,* 281 N.W.2d at 242; *United Power Association,* 277 N.W.2d at 267. However, in *Filler* we said:

"In situations where restrictions and regulations have been imposed upon the access of abutting owners, the question becomes one of whether or not, under the existing facts and circumstances, a reasonable means of access remains. If the abutter has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with, he has no cause of complaint. See *Johnson v. United States,* 479 F.2d 1383, 202 Ct.Cl. 405 (1973); *Balog v. State, Department of Roads,* 177 Neb. 826, 131 N.W.2d 402 (1964); 2A Nichols on Eminent Domain § 6.444[2]; 4A Nichols on Eminent Domain § 14.-2431; Annot. 42 A.L.R.3d 13."

*Filler*, 281 N.W.2d at 240. *See generally*, 7A Nichols on Eminent Domain § 12.04; 8A Nichols on Eminent Domain § 16.-03[2][b][iii]. Therefore, even though a taking or damage to private property has been determined as a matter of law, a second question concerning whether or not reasonable access to an abutting roadway remains must also be addressed. *Filler*, 281 N.W.2d at 242 (citing *Guerard v. State*, 220 N.W.2d 525 (N.D.1974)). If free and convenient access to the abutting roadway remains, and the landowner's means of ingress and egress are not substantially impaired, the landowner has not suffered any compensable injury. *Filler*, 281 N.W.2d at 240.

The question of whether or not reasonable access to an abutting roadway remains is a question of fact. *Id.* at 242. Our review of the district court's findings of fact is governed by the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P. On appeal, after reviewing the entire record, a finding of fact will be overturned only when we are left with a definite and firm conviction that a mistake has been made. *E.g., In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973). We will not reverse the trial court's determination merely because we may have viewed the facts differently, and we are not permitted to substitute our judgment for that of the trial court. *E.g., Check Control, Inc. v. Shepherd*, 462 N.W.2d 644, 647 (N.D.1990) (citing *Miller Enterprises v. Dog N' Cat Pet Ctrs.*, 447 N.W.2d 639, 644 (N.D.1989)).

Barlow asserts the district court erred in determining that reasonable access to and from the Bypass remained following the closing of the Tenth Street intersection.[1] The district court made the following finding of fact:

"XXIII.

Twentieth Avenue, being directly accessible to traffic from 16th Street and Broadway, the two primary north-south arteries in the City of Minot, provides the Webber Barlow property at Block 1, Highway Subdivision, with reasonably convenient access to and from the Bypass."

In *Filler*, we said that loss of traffic, loss of business, and circuity of travel are not themselves compensable. 281 N.W.2d at 243. However, we do recognize that loss of traffic, loss of business, and circuity of travel are factors to be considered in determining the reasonableness of the remaining access to and from an abutting roadway. *Id.*

The *Filler* case involved many of the same roadways which are involved in the case at hand. In *Filler*, the plaintiff complained that the access from his property to Broadway [Highway 83] had been impaired by the construction of the Broadway and Bypass cloverleaf interchange. Prior to construction of the interchange, Filler had access to Broadway 300 feet north and 875 feet south of his property. In order to reach Broadway following the construction of the interchange, Filler had to navigate a circuitous route of 1060 feet. After evaluating a number of factors such as loss of traffic, loss of business, and the circuity of travel, we concluded that access to Broadway from Filler's property had been substantially impaired.

In the instant case, prior to the closing of the Tenth Street intersection, Barlow had direct access to and from the Bypass. In order to reach the Bypass now, Barlow must travel approximately six blocks either east to Broadway, or west to Sixteenth Street. Broadway is a four-lane controlled access highway which intersects the Bypass through the use of a cloverleaf interchange. As noted earlier, the intersection of Sixteenth Street and the Bypass is

---

1. Property owners have a right to continued access to abutting roadways. *E.g., Filler v. City of Minot*, 281 N.W.2d 237, 239 (N.D.1979). The relevant question in the case at hand is whether or not reasonable access to and from the abutting roadway remains. While reasonable access to and from the Barlow property exists without access to the Bypass, that is not relevant to the determination of whether or not reasonable access to the Bypass remains. It may be a proper consideration in a determination of the amount of damages. "Other means of access may mitigate damages, [citation omitted] but [that] does not constitute a defense to the action however." *Balog v. State, Department of Roads*, 131 N.W.2d 402, 410, 177 Neb. 826 (1964).

"a bizarre and bewildering array of access roads." In addition, evidence at trial established that there has been a large decrease in the traffic flow on Tenth Street.

Upon considering the circuity of travel which is now necessary to maintain Barlow's right to access the Bypass, and the decrease in traffic flow on Tenth Street, we conclude that Barlow's access to and from the Bypass has been so substantially impaired that he no longer has reasonable access. Therefore, we are left with the definite and firm conviction that a mistake was made in the district court's finding that reasonable access between Barlow's property and the Bypass remains.

■ The defendants assert that, even if the remaining access is found to be unreasonable, Barlow's claims are barred by the statute of limitations. An action for damages resulting from inverse condemnation must be brought within six years of the time the cause of action accrues. *Maragos v. City of Minot,* 191 N.W.2d 570, 572 (N.D.1971).

■ There is no factual dispute concerning the statute of limitations question. The plaintiffs commenced this action on November 1, 1988. The defendants assert that the action began to accrue when the temporary barriers were erected in 1980. Barlow asserts that the action began to accrue no earlier than late 1982 when construction of the permanent barriers was completed. The district court made no conclusions of law on the issue of the statute of limitations, but in its findings of fact said: "Permanent barricades were installed in late 1982 or early 1983, but in any event within six years before commencement of this action." We interpret this to be a denial of the defendant's statute of limitations defense.

At trial, the evidence disclosed that, while the temporary barriers were in place, there was a continuing debate over how to control the traffic congestion at the Tenth Street intersection. The suggested solutions ranged from closing the intersection completely to installing signalization. The district court made a finding of fact that it was not until 1988 that access between Barlow's property and the Bypass was completely eliminated. In addition, we have previously said:

> "[A] city may do many things which are not compensable to an abutting property owner, such as re-routing or diverting traffic; constructing a traffic island; installing a median strip prohibiting or limiting crossovers from one lane to another; using traffic control devices; prescribing one-way traffic; *placing restrictions on u-turns, left and right turns;* restricting the weight, size, and speed of traffic on the street; or installing 'no parking' signs." (Emphasis added.)

*Yegen,* 291 N.W.2d at 425. The effect of the temporary barriers was to restrict left turns off of Tenth Street onto the Bypass, and eliminate all through traffic on Tenth Street. The temporary barriers did not cut off right turns from Tenth Street onto the Bypass, nor did they cut off the exit of traffic on the Bypass to the Barlow property, nor did they cut off entry onto Tenth Street from the west, permitting traffic to proceed directly to the Barlow Property.

The 1988 construction prevented all access to and from the Bypass on the north half of the intersection. Only right-hand turns onto and off of the intersection remain on the south half of the intersection. Therefore, access between the Barlow property and the Bypass was completely eliminated at the Tenth Street intersection when the 1988 construction was complete.

Considering these circumstances, we conclude that Barlow's action for inverse condemnation did not begin to appreciably and permanently accrue at least until the permanent barriers were in place. Accordingly, we find the defendant's assertions that Barlow's claim is barred by the statute of limitations to be without merit.

For the reasons stated in the opinion, the decision of the district court is reversed, and this case is remanded for a determination of appropriate damages.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.