Alice BOEHM, Plaintiff,

Anton Boehm and Todd Boehm,
Plaintiffs and Appellants,

v.

Richard J. BACKES, Commissioner,
North Dakota Department of Transportation, Defendant and Appellee.

Civ. No. 920053.

Supreme Court of North Dakota.

Dec. 14, 1992.

Vogel Law Firm, Mandan, for plaintiffs and appellants Anton Boehm and Todd Boehm; argued by Jos. A. Vogel, Mandan.

Michele G. Johnson (argued), Asst. Atty. Gen., Atty. Gen.'s Office, Bismarck, for defendant and appellee.

MESCHKE, Justice.

Anton and Todd Boehm appeal from a judgment dismissing their inverse condemnation claim against the North Dakota State Highway Department. The trial court ruled that the Department's construction of an overpass that converted the street in front of the Boehms' property into a cul-de-sac by closing off direct access to their business from the nearby highway was not a taking. We reverse and remand.

Since 1984, the Boehms have operated a 24–hour towing and auto repair business in the 1200 block fronting First Street Southwest in Mandan, North Dakota. In 1985, they moved the business to the building and lot adjacent to its original site. The following year, Anton Boehm and the owner of the new property orally agreed that Boehm would purchase the property for $30,000. Because Boehm was unable to make the $4,000 down payment, the prepared contract for deed was never signed. Instead, Boehm informally agreed with the owner to make $350 monthly payments on the purchase price. This arrangement was formalized in February 1989 when the owner executed an option to Anton Boehm to purchase the property for the balance of the price due.

On August 8, 1989, the Boehms exercised the option, paid the balance due, and obtained the deed to the property. About the same time, the Boehms learned that the Department planned to construct a new overpass to replace the nearby highway viaduct. In April 1990, access to their business was first affected by a detour sign to aid construction. Next, the Boehms sued the Department for a taking of their property, claiming that the closing of the entry end of their street by the Department's construction of the overpass deprived their business of direct access to the highway.

Finally, on May 15, 1991, the intersection of First Street Southwest was completely closed to direct traffic to and from the highway into the block where the Boehms' business is located. The street in front of Boehms' business became a cul-de-sac with its only access to and from the highway in the opposite direction via a circuitous route through a residential neighborhood.

The trial court bifurcated trial of the questions of taking and damages. After a trial without a jury on the taking question, the trial court concluded that the Boehms' "actual purchase of the property in 1989 was made with full knowledge that access would be limited upon construction of the overpass." The trial court also ruled that the Boehms "suffered no monetary loss or income loss attributable to the present access when compared to the previous access," that the damage they "have suffered to their access is a damage shared by the general public," and that their circuitous access was "not unreasonable." The court dismissed the action. The Boehms appealed.

The Boehms claim a compensable interest in the property when the taking occurred on May 15, 1991, arguing that their foreknowledge of the project or of its potential effect on their access is irrelevant. They argue that the circuitry of travel, loss of traffic, and loss of business that resulted from the closure of direct access proves a taking as a matter of law.

Relying on the factual finding that the Boehms' "actual purchase of the property in 1989 was made with full knowledge that access would be limited upon construction of the overpass," the Department responds that this forecloses the Boehms' claim for a taking. The Department relies on a statement in *Guerard v. State*, 220 N.W.2d 525, 528 (N.D.1974), that a property owner "may be foreclosed from recovery if his damage is of a kind sustained by the public generally (even though it may be greater in degree) *or of a kind contemplated by the parties at the time of the dedication of the street....*" (Emphasis by the Department). But there is no finding that any diminution in value of this tract was contemplated or could have been reasonably anticipated at the time of the street's original dedication. *See Guerard* at 528. If a landowner is damaged by a public improvement to a street that could not have been reasonably anticipated when the street was dedicated, the landowner is entitled to compensation. *Filler v. City of Minot*, 281 N.W.2d 237, 241–42 (N.D.1979); *see also King v. Stark County*, 67 N.D. 260, 271 N.W. 771, 775 (1937). Because the Department's project was planned long after the original dedication of this street, and well after the Boehms located their business there, the Department's reliance upon this statement in *Guerard* is misplaced.

The irrelevance of knowledge of the expected improvement is confirmed by precedents elsewhere. *Department of Transp. v. Newmark*, 34 Ill.App.3d 811, 341 N.E.2d 133, 136 (1975) (The admission of evidence and counsel's arguments on the questions of the owner's " 'prior knowledge', other property holdings, and business acumen, were improper because they were totally irrelevant...."); *State ex rel. Herman v. Schaffer*, 110 Ariz. 91, 515 P.2d 593, 600 (1973); *Babinec v. State*, 512 P.2d 563, 572 (Alaska 1973) (Knowledge by the owner that a public improvement is proposed that will take part of his property does not prevent recovery). In this case, the Boehms' knowledge of the impending construction of the overpass when they completed purchase of the property was irrelevant to their right to just compensation for a later taking.

If the Boehms owned the property on May 15, 1991, the date of the permanent closure of the street intersection for direct access to their business property from the highway, they held a compensable interest if that event was a taking. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 319, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987) ("[T]he valuation of property which has been taken must be calculated as of the time of the taking, and ... depreciation in value of the property by reason of preliminary activity is not chargeable to the government.") Unless the Boehms' access was completely cut off for a significant period by the temporary detour during construction, there is no right to compensation for temporary inconvenience. *Filler*, 281 N.W.2d at 244. The Boehms completed purchase of the property by warranty deed on August 8, 1989, nearly two years before the permanent closure. Therefore, before their direct physical access was completely cut off, the Boehms held a compensable interest.

"Private property shall not be taken or damaged for public use without just compensation ... for the owner." N.D. Const. art. I, § 16; NDCC 32–15–01(2). Private property may be damaged by a public improvement "though no part thereof is taken." NDCC 32–15–22(3); *King v. Stark County*, 271 N.W. 771; *Donaldson v. City of Bismarck*, 71 N.D. 592, 3 N.W.2d 808, 816 (1942) (On Petition For Rehearing). Whether private property has been taken for a public improvement is a question of law. *Cady v. North Dakota Dep't of Transp.*, 472 N.W.2d 467, 469 (N.D.1991). Substantial impairment of established access to and from an adjacent highway is a taking. *Id.* at 471.

"[A] property owner has a right of access to abutting highways and streets." *Cady* at 469; *Yegen v. City of Bismarck*, 291 N.W.2d 422 (N.D.1980). *Cady* ruled that the right of access is "a private right which entitles the abutting land owner [to]

just compensation if that right is impaired or destroyed." 472 N.W.2d at 469. Under NDCC 24–01–32, the Department may acquire rights of access.

When governmental action impairs existing access to private property adjoining a public highway, the test for determination of a taking is the reasonableness of the access remaining:

> In situations where restrictions ... have been imposed upon the access of abutting owners, the question becomes one of whether or not, under the existing facts and circumstances, a reasonable means of access remains. *If the abutter has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with, he has no cause of complaint.*

*Filler v. City of Minot*, 281 N.W.2d 237, 240 (N.D.1979) (emphasis added). Diversion of public traffic does not alone create a right to compensation. *Guerard*, 220 N.W.2d at 529; *Jamestown Plumbing & Heating Co. v. City of Jamestown*, 164 N.W.2d 355, 362 (N.D.1968). However, loss of traffic, loss of business, and circuitry of travel are factors to be fairly weighed in determining the reasonableness of access remaining to and from an adjacent highway after the direct physical disturbance by closure of the street intersection. In *Filler* and *Cady*, we dealt with cases similar to this one, reversed the conclusion in each that there was no taking, and remanded for determination of just compensation.

In *Cady*, the Department closed an intersection and created a cul-de-sac that eliminated the owner's direct access between the property and the adjacent bypass highway. Traffic to and from the property was forced to travel six blocks more either east or west from the open end of the cul-de-sac in order to access a thoroughfare that connected with the same highway. On appeal from a ruling that no taking had occurred, we recognized that circuity of travel and resulting loss of traffic and business are not always, in themselves, compensable. *Cady* at 470. Nevertheless, we held that those factors must be fairly weighed in

determining whether the closure of direct access to and from an adjoining highway has resulted in such an unreasonable interference with access that it becomes a taking.

In *Cady*, the circuity of travel created by the closure of direct access exceeded six blocks. In *Filler*, an additional 1,060 feet of travel was necessary for access after the closure of direct highway access by the public improvement. In *Guerard*, another case that resembles this one, the claimant owned property located within the block closed off at the intersection by the newly constructed underpass, making a cul-de-sac that required use of a circuitous alternative route to reach Guerard's business from the thoroughfare. In all three cases, we concluded that the substantial interference with direct access to the nearby thoroughfare resulted in a compensable taking as a matter of law, and we remanded for a determination of damages.

Here, access to the Boehms' business after the permanent closure forced the use of an indirect route of an additional "four large blocks," through a residential neighborhood, a distance "comparable to six regular city blocks." This physical interference specially affects the Boehms' business property. *See* 4A Julius L. Sackman, *Nichols' The Law of Eminent Domain* § 14A.03[6][b] (rev. 3d ed. 1992). We see no significant difference between the effects of the street closures in *Guerard*, *Filler*, and *Cady*, and the effect in this case.

Our review of a trial court's findings of fact is governed by the "clearly erroneous" standard. NDRCivP 52(a). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Blotske v. Leidholm*, 487 N.W.2d 607, 610 (N.D.1992). We are convinced that the trial court's findings in this case were induced by its mistaken view of the law about the Boehms' foreknowledge of the project

when they completed their purchase of the property. Although there is some evidence to support the trial court's findings that the Boehms' loss of income may have been attributable to other causes, this evidence is more relevant to the amount of just compensation. We are convinced on the entire evidence that a mistake has been made about whether the Boehms' means of ingress and egress was substantially impaired.

We conclude that the closure of the street intersection by the Department's construction of the overpass unreasonably impaired the Boehms' right of direct access to their property from the highway, and that the intersection closure was, therefore, a taking as a matter of law. We are convinced that the trial court's findings, that "remaining access [to the Boehms' property] is not unreasonable" and that the damage the Boehms "have suffered to their access is a damage shared by the general public," are mistaken and clearly erroneous. The Boehms are entitled to a determination of just compensation for the taking.

We reverse and remand.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and JOHNSON, JJ., concur.