2008 ND 206

Blake AASMUNDSTAD; Duane J. Armstrong; Gary Armstrong; Helen Armstrong; Pamela J. Armstrong; Jason Bednarz; Karen (Brenda) Bednarz; Ruddy Binfet; Edward Brown; George A. Brown, Jr.; Rodney J. Brown; Ronald J. Capp; R.A. Charlton; Barry D. Cox; Judy M. Cox; Margaret R. Cox; Jean K. Davis; Mary E. Dion; Lyle G. Dykhoff; Julie Englerth; Larry Englerth; Mary Englerth; Donna Estenson; Larry Estenson; Genevieve Foss; David Gorham; Constance Haugen; Rodger E. Haugen; Elaine F. Heisler; Ronald D. Heisler; Edval Helle, Jr.; Randy Helle; Merle Henke; Nicole Henke; Ardon L. Herman; Audrey Herman; Eileen Herman; Reginal K. Herman; Duane Howard; Floyd Howard; Orpha Howard; Lyle Huffman; Mavis Huffman; Joe E. Jager; Rose Ann Jager; Edna Kenner; Lloyd Kenner; Douglas Ketterling; Anna E. Knudson; Bjarne J. Knudson; John Knudson; Penelope Knudson; Donald Konzak; Gregory Konzak; Karin Konzak; Kathleen E. a/k/a Kathleen E. Lerick; Mary Konzak; Mavis Konzak; Peter Konzak; Leo Konzak Trust; Julian Kostecki; Boyd LaFleur; Richard LaFleur; Gregory Maddock; Marvin Logan Ranch, LLC–Elizabeth Gjellstad and Gary Hegland; Carole Mattern; Donald Mattern; Dennis L. Melland; Gail Melland; Jacqueline Melland; Rodney Melland; Donald Mertens d/b/a Lake Region Bait Ranch; Mertens Farm Partnership (Robert Mertens, Dennis Mertens, Henry Mertens, Jr., Thomas Mertens, Timothy Mertens); Mary Nicholson; North Shore, Inc.; Alice Rassier; Jacob Roemmich; Carol Rohr; Arthur Rohr; Gerald Schmidt; Linda Schmidt; Rick A. Schwab; Gordon Shafer; Helen Shafer; Lillian Shafer; Richard Shafer; Jan Shelver; Clark A. Steinhaus; Lois Steinhaus; Stromme Brothers (Lloyd Stromme and Floyd Stromme); TBH Farms (Allan Thompson, Yvonne Thompson, Richard LaFleur, Shirley LaFleur, Boyd LaFleur and Susan LaFleur); Allan Thompson; Karen Tollefson; Kenneth D. Tollefson; James P. Wang; Daniel M. Webster; Doreen Webster; Carol Weed; Monte Weed; Raymond Weed; Darlene Wold; Myron Wold; and Marjorie Wood, Plaintiffs and Appellants

v.

STATE of North Dakota, North Dakota State Water Commission, North Dakota State Engineer, Ramsey County Water Resources District, Benson County Water Resources District, Towner County Water Resources District, Cavalier County Water Resources District, Rolette County Water Resources District, Pierce County Water Resources District, Nelson County Water Resources District, Walsh County Water Resources District, and Devils Lake Joint Water Resources District, and the officers, members, employees and agents of each in their official capacities, Defendants and Appellees.

No. 20080018.

Supreme Court of North Dakota.

Nov. 19, 2008.

As Modified Upon Denial of Rehearing April 2, 2009.

Gary R. Leistico (argued) and Nicholas R. Delaney (appeared), of Rinke Noonan, St. Cloud, MN, for plaintiffs and appellants.

Matthew Arnold Sagsveen (argued), Assistant Attorney General, Office of Attorney General, Bismarck, for defendants and appellees State of North Dakota, North Dakota State Water Commission, and North Dakota State Engineer.

Howard D. Swanson (appeared), of Letnes, Marshall, Swanson & Warcup, Ltd., Grand Forks, for defendants and appellees Ramsey County Water Resources District and Devils Lake Joint Water Resources District.

Ronald F. Fischer (argued) and Daniel L. Gaustad (appeared), of Pearson, Christensen & Clapp, PLLP, Grafton, for defendants and appellees Benson County Water Resources District, Towner County Water Resources District, Cavalier County Water Resources District, Rolette County Water Resources District, Pierce County Water Resources District, Nelson County Water Resources District, and Walsh County Water Resources District.

SANDSTROM, Justice.

[¶ 1] Approximately 100 owners of land near Devils Lake ("landowners") appeal from a district court judgment dismissing their inverse condemnation claims against nine water resource districts in the upper Devils Lake drainage basin and against the State, the State Engineer, and the State Water Commission ("defendants"). The landowners claim 15 government drainage projects in the Devils Lake drainage basin proximately caused flooding of their property above the ordinary high watermark of Devils Lake, which constituted the taking or damaging of their property without just compensation under N.D. Const. art. I, § 16. The landowners argue the district court erred in finding the drainage projects were not the proximate cause of their damages, the court erred in finding the defendants established an act of God was the sole proximate cause of the landowners' damages, the court erred in deciding some of the landowners' claims were barred by the statute of limitations, and the court erred in otherwise dismissing five landowners' claims. We hold the error, if any, by the district court

in its proximate cause analysis was not determinative of the outcome and the court did not clearly err in finding the drainage projects were not the proximate cause of the landowners' damages and an act of God was the sole proximate cause of their damages. We need not decide whether the court erred in deciding some of the landowners' inverse condemnation claims were barred by the statute of limitations, because those landowners have not demonstrated they were prejudiced by the dismissal of those claims. We affirm.

I

[¶ 2] Devils Lake is a natural body of water located within the Devils Lake drainage basin in the southern part of Ramsey County and the northeastern part of Benson County in northeastern North Dakota. The Devils Lake drainage basin consists of about 3,810 square miles, with 3,320 square miles draining parts of eight counties into Devils Lake and the remaining acreage draining into Stump Lake, which is east of Devils Lake. Devils Lake flows into Stump Lake at an elevation of about 1,446.5 feet above mean sea level. The Devils Lake drainage basin is closed, with no natural outlet for Devils Lake until it reaches an elevation of 1,457 feet above mean sea level and both Devils Lake and Stump Lake flow into the Sheyenne River.

[¶ 3] The Devils Lake drainage basin consists of a number of sub-basins, including the Stump Lake drainage basin, which drains directly into Stump Lake, and eight other sub-basins that ultimately drain into Devils Lake—the Edmore Coulee sub-basin located in Nelson, Ramsey, and Cavalier Counties; the Starkweather Coulee sub-basin located in Cavalier and Ramsey Counties; the Calio Coulee sub-basin located in Cavalier, Ramsey, and Towner Counties; the Mauvais Coulee sub-basin located primarily in Towner, Benson, and

Ramsey Counties; the Little Coulee sub-basin located in Benson, Pierce, and Rolette Counties; the Comstock Coulee sub-basin located in Benson County; the Devils Lake North Slope sub-basin located in Ramsey County; and the Devils Lake South Slope sub-basin located in Benson County.

[¶ 4] Before 1979, water in the upper basin from the Edmore Coulee, Starkweather Coulee, Calico Coulee, Mauvais Coulee, and Little Coulee sub-basins drained into several lakes north of Devils Lake, called the chain of lakes, before entering the Big Coulee and ultimately draining into the West Bay of Devils Lake. The natural drainage path for the chain of lakes flows from east to west and follows Sweetwater Lake, Morrison Lake, Cavanaugh Lake, Dry Lake, Mikes Lake, Chain Lake, Lake Alice, and Lake Irvine through the Big Coulee before eventually discharging into the West Bay of Devils Lake. In 1979, Channel A, a channel about 4 miles long with a 50 foot wide bottom and depths of 15 to 35 feet, was constructed to bypass the natural and circuitous drainage path through the chain of lakes into the West Bay of Devils Lake and to connect the south end of Dry Lake directly with Six Mile Bay on Devils Lake. As a result of Channel A, water from the Edmore Coulee and the Starkweather Coulee sub-basins, which are both located in the northeastern part of the Devils Lake drainage basin, drained through Dry Lake and Channel A directly to Six Mile Bay on Devils Lake without following the natural drainage path through the chain of lakes into Devils Lake.

[¶ 5] The landowners own property adjacent to Devils Lake and above the lake's ordinary high watermark of 1,426 feet above mean sea level. *See Matter of Ownership of Bed of Devils Lake,* 423 N.W.2d 141, 145 (N.D.1988) (affirming dis-trict court decision that ordinary high watermark of Devils Lake was 1,426 feet above mean sea level). In their initial complaint dated May 25, 1999, the landowners claimed the defendants' construction and participation in 15 government drainage projects caused additional water to enter Devils Lake and raised the elevation of the lake by an additional amount of water that would not have entered the lake but for those projects. The landowners claimed the defendants participated in the 15 drainage projects, which were generally designed to alleviate farmland flooding in the upper basin and consisted of cleaning and improving existing channels and constructing new channels and lake outlet projects in the drainage basin. The landowners' complaint identified these projects as: the Hurricane Lake outlet channel and control structure; the Iverson Dam removal; the Lake Ibsen control structure; the Mauvais Coulee improvements above Lake Alice; the Mauvais Coulee improvements below Lake Irvine; the Lake Irvine control structure; the channel improvements between Mikes Lake and Chain Lake; the Calio Coulee channel improvements above Chain Lake; the Grand Harbor drain and pump station; the Starkweather channel improvements; the channel improvements between Morrison Lake and Cavanaugh Lake; the channel improvements between Cavanaugh Lake and Dry Lake; the ring channel on the north and east sides of Devils Lake; the Creel Bay Dike; and Channel A.

[¶ 6] The landowners asserted those projects caused their property to be flooded above the ordinary high watermark of Devils Lake and alleged claims for: (1) damages for unconstitutional taking of their property under N.D. Const. art. I, § 16; (2) unreasonable use; (3) unlawful drainage; (4) nuisance; (5) trespass; and (6) negligence. The defendants answered and generally claimed the flooding was

caused by an unprecedented and extraordinary wet cycle that was an act of God.

[¶ 7] In November 1999, the district court dismissed all of the landowners' claims against the State entities, except the inverse condemnation claims, for failure to file a timely claim with the office of management and budget under N.D.C.C. § 32–12.2–04. In 2002, the court bifurcated the issues of liability and damages. In April 2005, the court granted some of the defendants partial summary judgment on the statute of limitations, concluding as a matter of law that the landowners' claims accrued when they alleged their land first became flooded. The court decided all the landowners' claims against the local water resource districts, except the inverse condemnation claims, were governed by a specific three-year statute of limitations in N.D.C.C. § 32–12.1–10 for tort actions against political subdivisions. The court decided the landowners' inverse condemnation claims against the water resource districts were based upon an implied contract and were governed by a specific six-year statute of limitations in N.D.C.C. § 28–01–16(1) for contract actions. The court also decided the landowners' inverse condemnation claims against the State were governed by a specific three-year statute of limitations in N.D.C.C. § 28–01–22.1 for actions against the State.

[¶ 8] In February 2006, the district court dismissed the landowners' remaining tort claims against the water resource districts, concluding the districts were entitled to discretionary immunity for those claims. As a result of those pretrial orders, the landowners' claims remaining for trial included approximately seven inverse condemnation claims against the State and approximately sixty-one inverse condemnation claims against the water resource districts.

[¶ 9] In June 2006, the district court denied cross-motions by the landowners and the defendants for summary judgment on liability and causation for the remaining inverse condemnation claims, concluding there were disputed issues of material fact about whether the drainage projects were the proximate cause of the landowners' damages. The court identified the proximate cause issue for trial:

Likewise, merely to show that certain volumes of water came into Devils Lake ... is inadequate to establish liability in light of the undisputed fact that the waters in the upper basin naturally drain in Devils Lake. The question is still how much more. More specifically, the question is how much more because of these projects. The plaintiffs alleged these very things in their amended complaint. They will ultimately have to prove them because it goes to the very heart of the proximate cause burden on them under the law.

To the extent that the defendant[s] raise act of God as an affirmative defense, they would have to establish that the act of God was the sole proximate cause of the damages if that act of God and the fault of the defendants combined to produce the injury to the plaintiffs. *Huber v. Oliver County*[,] 1999 [ND] 220, ¶ 9[,] 602 N.W.2d 710. However, even before this court can consider an act of God defense, the plaintiffs must first meet their burden and establish that but for the identified water projects, water entered Devils Lake that would not otherwise have entered it and by that caused a taking or damage.

[¶ 10] At a lengthy bench trial on liability, evidence was presented showing Devils Lake's elevation historically had been higher than its elevation at trial of 1,449.2 feet above mean sea level, and Devils Lake had overflowed into Stump Lake at least 9

times in the last 10,000 years, and both Devils Lake and Stump Lake had overflowed into the Sheyenne River at least 6 times in the last 10,000 years. There was evidence that the elevation of Devils Lake was 1,441 feet above mean sea level in 1830 and was 1,438 feet above mean sea level in 1867. After 1867, Devils Lake's elevation declined to 1,400.9 feet above mean sea level by 1940, and the lake decreased in size from 140 square miles in 1867 to 10.2 square miles in 1940. Between 1940 and 1968, Devils Lake fluctuated from 1,400.9 to 1,419.36 feet above mean sea level. In January 1969, the lake's elevation was 1,410.5 feet above mean sea level, and it rose to 1,426.95 feet above mean sea level by 1979. Between 1979 and 1993, the lake's elevation fluctuated between 1,422.65 and 1,428.81 feet above mean sea level, and the lake's elevation decreased in nine out of fourteen of those years. In 1993, the lake's peak elevation was 1,427.81 feet above mean sea level. There was evidence showing the Devils Lake drainage basin began experiencing an increase in precipitation and runoff in the 1990s. Before 1993, the average annual runoff into Devils Lake for the preceding 42 years was 60,000 acre-feet per year, and from 1993 through 1999, the average annual runoff into Devils Lake was 328,000 acre-feet per year. From 1993 to 2004, the peak elevations for Devils Lake rose more than 20 feet from 1,427.81 to 1,449.10 feet above mean sea level. The defendants' expert, Leon Osborne, testified about regional climatic changes in the Devils Lake drainage basin, which resulted from a shift in air circulation patterns and jet streams and caused frequent storm and rainfall events in the basin. According to Osborne, the climatic change and increased precipitation was part of a 120–year cycle, which was coupled with other factors affecting evaporation and which

had begun in the 1970s and manifested itself in the 1990s.

[¶ 11] The district court ultimately issued an exhaustive decision dismissing with prejudice the remaining landowners' inverse condemnation claims. The court found the landowners' evidence that additional water flowed into Devils Lake because of the drainage projects was unreliable and speculative. The court found that even if that evidence was reliable, the additional amounts of water that the plaintiffs claimed entered Devils Lake because of some of the projects was not a substantial part of additional flooding in Devils Lake. The court decided the drainage projects were not the proximate cause of the landowners' damages and also found that an act of God, an unprecedented wet cycle, was the sole proximate cause of their damages. The court found, in part:

[T]his climate change and particularly the wet cycle of this new climatic shift or change is the reason that Devils Lake and the Devils Lake Basin are experiencing the high volumes of water discharging into Devils Lake and adding water to the wetlands and depressions in the upper basin. This wet cycle as described above has had an adverse hydrologic impact on Devils Lake and the water elevations of it, as well as on the entire Devils Lake Basin.... [T]his court is satisfied that the climatic change and wet phase for the water budget within that change that was experienced by the Devils Lake Basin in the 1990's was a significant factor in the increased water levels experienced on Devils Lake. This determination impacts issues relating to causation, an element required in establishing inverse condemnation liability.... Notwithstanding the plaintiffs' claim that these 15 projects impacted the water elevations of Devils Lake discharging more water into it than would otherwise have oc-

curred but for the projects, the history of the lake elevations are inconsistent with that claim. The first of these projects was commenced in 1957. That was the Lake Irvine control structure. That was followed by several other projects especially in the 1970's including the Calio Coulee channel improvements, channel improvements between Mike's Lake and Chain Lake, Mauvais Coulee channel improvements below Lake Irvine, the Hurricane Lake control structure, the Lake Ibsen control structure, and Channel A in 1979. Up to that point the volume of water in Devils Lake increased but never even reached the high water mark of 1426 feet. Once Channel A, (the largest project and the one that created the shortcut of water flow for discharge into Devils Lake) was completed the high water mark was reached and slightly exceeded. Then, however, over several years until 1993 the volume of the water in the lake decreased. This is notwithstanding the fact that Channel A by that time had been established, and Morrison Lake and Starkweather Coulee channel improvements had been made.

Beginning in 1993 voluminous acre feet of water began to discharge into Devils Lake. This is in the same time period as the wet phase of the climatic change described by Professor Osborne. Particularly, if Channel A and then the channel improvements and work on Morrison–Sweetwater Lake and watersheds above it had a measurable impact on the additional discharge of the water into Devils Lake, one would have expected to experience that soon after 1979. But that does not happen. Instead, the water flows discharging into Devils Lake are more consistent with climatic circumstances related to drought, wet cycles, major storm events, or rapid spring snow melt. Therefore, [the] assertion

that the climatic circumstances of the Devils Lake Basin distort the lake elevations is more consistent with the discharges that Devils Lake has experienced over a long period of time, than with Plaintiffs' theory.

This history of lake fluctuations is much more consistent with the explanations offered by the defendants than that claimed by the plaintiffs. So, as a symptom for the cause of the lake's changes this court is far more inclined to find that those symptoms support the defendants' explanation rather than that of the plaintiffs. In that respect it becomes more persuasive for the defendants.

[¶ 12] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The landowners' appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 28–27–01.

II

[¶ 13] The landowners argue the district court erred in finding the 15 drainage projects were not the proximate cause of their damages. The landowners argue the court applied an erroneous standard for proximate cause, using a "substantial part" analysis for concurrent causes in negligence cases under *Beilke v. Coryell*, 524 N.W.2d 607, 610 (N.D.1994), rather than a "but for" standard for inverse condemnation cases. They claim the court ultimately found some of the projects, specifically Channel A and the Starkweather Channel improvements, caused additional water to enter Devils Lake that would not otherwise have entered the lake, and the court erred in requiring evidence the drainage projects were a "substantial part" of the flooding. Relying on *Northern Pac. Ry. Co. v. Morton County*, 131 N.W.2d 557,

568 (N.D.1964), the landowners claim a portion of the additional flooding suffered by them "would not have been sustained but for the improvement for which the sovereign is responsible." The landowners also claim the court erred in incorporating a foreseeability requirement into the proximate cause analysis, because foreseeability is not a necessary element of causation in an inverse condemnation action. The landowners further argue the court erred in finding an act of God was the sole proximate cause of their damages. They argue the court's decision that some of the governmental projects caused additional water to enter Devils Lake precludes a successful act-of-God defense, because an act of God was not the sole proximate cause of the damage.

[¶ 14] The defendants respond that the landowners failed to present reliable evidence to establish an additional amount of water entered Devils Lake as a result of the drainage projects, and the defendants claim this Court need not address the district court's "substantial part" analysis of proximate cause. The defendants also argue the landowners invited the district court to use a "substantial part" analysis for proximate cause, and the landowners cannot now claim the court erred in using that standard. The defendants also argue the flooding was part of an extraordinary and unprecedented wet cycle that was an act of God and was the sole proximate cause of the landowners' damages.

[¶ 15] Under N.D. Const. art. I, § 16, "[p]rivate property shall not be taken or damaged for public use without just compensation having been first made to ... the owner." This Court has recognized the constitution " 'secures to owners, not only the possession of property, but also those rights which render possession valuable.' " *Donaldson v. City of Bismarck*, 71 N.D. 592, 599–600, 3 N.W.2d

808, 812 (1942) (quoting *Pennsylvania R. Co. v. Angel*, 41 N.J. Eq. 316, 7 A. 432, 433 (Err. & App.1886)). "Inverse condemnation actions are a property owner's remedy, exercised when a public entity has taken or damaged the owner's property for a public use without the public entity's having brought an eminent domain proceeding." *Knutson v. City of Fargo*, 2006 ND 97, ¶ 9, 714 N.W.2d 44. Under N.D. Const. art. I, § 16, an inverse condemnation claim does not hinge on negligence or intent to harm, but "requires a public entity's taking or damaging an owner's property by some deliberate act, whether done intentionally, negligently, or innocently." *Knutson*, at ¶ 13. This Court has held the constitutional guarantee for inverse condemnation constitutes an implied contract to compensate for damages caused by a public entity. *Northern Pac. Ry. Co.*, 131 N.W.2d at 563; *Little v. Burleigh County*, 82 N.W.2d 603, 607 (N.D.1957). To establish an inverse condemnation claim, a property owner must prove a public entity took or damaged the owner's property for a public use and the public use was the proximate cause of the taking or damages. *Knutson*, at ¶ 9; *Frank v. County of Mercer*, 186 N.W.2d 439, 445–46 (N.D.1971); *Northern Pac. Ry. Co.*, 131 N.W.2d at 566–68.

[¶ 16] Whether a public improvement is the proximate cause of a taking or damages is a question of fact. *Northern Pac. Ry. Co.*, 131 N.W.2d at 563–64. In actions tried without a jury, we review a district court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the court made a mistake. *Edward H. Schwartz Constr., Inc.*

*v. Driessen,* 2006 ND 15, ¶ 6, 709 N.W.2d 733. A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply that we may have viewed the evidence differently does not entitle us to reverse the court's findings of fact. *Id.* We do not reweigh the evidence, and we give due regard to the district court's opportunity to judge the witnesses' credibility. *Id.*

▬▬▬ [¶ 17] In its conclusions of law, the district court said the landowners conceded the law relating to proximate cause in tort actions applied to inverse condemnation actions and used a proximate cause and substantial factor analysis from a tort case, *Beilke,* 524 N.W.2d at 610, to analyze proximate cause for some of the drainage projects. We need not decide whether the district court erred in employing a substantial part analysis for proximate cause for some of the drainage projects under the circumstances of this case, because we conclude the trial court's finding that the evidence presented by the landowners on the amount of water that reached Devils Lake as a result of the projects is unreliable is controlling. Proximate cause cannot be established without reliable evidence establishing a causal connection. *See Frank,* 186 N.W.2d at 446 (quoting 4 *Nichols on Eminent Domain,* § 14.24 and stating damages must be direct and proximate and not such as is possible or may be conceived by imagination); *Northern Pac. Ry. Co.,* 131 N.W.2d at 567 (same). We therefore conclude the district court did not clearly err in deciding the drainage projects were not the proximate cause of the landowners' damages.

▬▬▬ [¶ 18] The district court also found that an act of God, an unprecedented wet cycle, was the sole proximate cause of the flooding and the landowners' damages. In *Frank,* 186 N.W.2d at 443–46, this Court discussed issues about an act-of-God defense in the context of proximate cause. In deciding an unprecedented and extraordinary rainstorm was an act of God, this Court outlined the requirements for an act of God:

> In defining an act of God as being an extraordinary or unprecedented act, this court held, in *Soules v. Northern Pac. Ry. Co.,* 34 N.D. 7, 157 N.W. 823, 824 (1916), in paragraphs 6 and 7 of the syllabus:
>
> "6. Extraordinary or unprecedented floods are floods which are of such unusual occurrence that they could not have been foreseen by men of ordinary experience and prudence. Ordinary floods are those, the occurrence of which may be reasonably anticipated from the general experience of men residing in the region where such floods happen.
>
> "7. In passing upon what is or what is not an extraordinary flood or whether it should have been anticipated and provided against, the question to be decided is: 'Considering the rains of the past, the topographical and climatic conditions of the region and the nature of the drainage basin as to the perviousness of the soil, the presence or absence of trees or herbage which would tend to increase or prevent the rapid running off of the water, would or should a reasonably prudent man have foreseen the danger and provided against it?'"

In *Reichert v. Northern Pac. Ry. Co.,* 39 N.D. 114, 167 N.W. 127, 136 (1918), this court held:

> "We must, indeed, hold to what we believe to be the prevailing American rule, that the defense in such cases can only be that of vis major, or the act of God, and that the act of God in its legal sense applies only to events in nature so extraordinary that the history of the

climatic variations and other conditions in the particular locality affords no reasonable warning of them, and that damages cannot be avoided on the grounds that the flood was an act of God, where, from geographical and climatic conditions, the flood might have been anticipated, though it occurred infrequently."

Whether a flood is extraordinary or unprecedented is a question of fact to be determined as any other question of fact and this is the burden of the party asserting. *Ferderer v. Northern Pac. Ry. Co.*, 77 N.D. 169, 42 N.W.2d 216 (1950); *Reichert v. Northern Pac. Ry. Co., supra; Soules v. Northern Pac. Ry. Co., supra.*

*Frank,* at 443.

[¶ 19] This Court's decisions have recognized that to prevail on an act-of-God defense, a defendant must prove the claimed act of God was the sole proximate cause of the damage, and if the act of God and a defendant's fault or negligence combined to produce the damage, the defendant was still liable. *Huber v. Oliver County,* 1999 ND 220, ¶ 9, 602 N.W.2d 710; *Lang v. Wonnenberg,* 455 N.W.2d 832, 836 (N.D.1990); *Hoge v. Burleigh County Water Mgmt. Dist.,* 311 N.W.2d 23, 29 (N.D. 1981); *Dempsey v. City of Souris,* 279 N.W.2d 418, 420 (N.D.1979). Whether an act-of-God defense has been established is a question of fact. *Dempsey,* at 421; *Frank,* 186 N.W.2d at 443.

[¶ 20] Here, the district court found the landowners' evidence that several of the drainage projects caused additional water to enter Devils Lake was not reliable, was speculative, or was insufficient, and the landowners' evidence failed to establish those projects proximately caused their damages. The court found that even if the landowners' evidence about the contribution of some of those drainage projects to the flooding was accurate and reli-

able, the contribution was not a substantial part of the flooding and damages. For Channel A, the court found the testimony of the landowners' expert, Cecilio Olivier, was insufficient to establish how much additional water entered Devils Lake because of Channel A. The court found, even if Olivier's testimony about additional water was reliable, that amount of water was not a substantial part of the landowners' damages. The court also found Dr. Lawrence Woodbury provided evidence that without Channel A, 42,635 acre feet of water would have evaporated on the upper chain of lakes and would not have entered Devils Lake from 1983 through September 1996, but that calculation did not account for evaporation of that water once it reached Devils Lake. The court said that 42,635 acre feet of water was not a substantial part of the landowners' damages. For the Starkweather Channel improvements, the court found the landowners failed to quantify the contribution that project had to elevation increases on Devils Lake. The court also said there was a reasonable inference that a greater amount of water potentially would have entered Devils Lake because of the Starkweather Channel improvements, but that amount was not a substantial part of the increased volume of Devils Lake.

[¶ 21] We have sustained the district court's decision that the drainage projects were not the proximate cause of the landowners' damages because of lack of reliable evidence establishing a causal connection. There is evidence in this record to support the court's finding that an extraordinary and unprecedented wet cycle in the Devils Lake drainage basin was an act of God and was the sole proximate cause of the landowners' damages. We are not left with a definite and firm conviction the court made a mistake in finding an act of God was the sole proximate cause of the

landowners' damages. We therefore conclude the district court's finding of an act of God is not clearly erroneous.

## III

[¶ 22] The landowners argue the district court erred in holding some of their inverse condemnation claims were barred by the statute of limitations and in granting summary judgment dismissal of those claims.

[¶ 23] Here, we have affirmed the district court's decision on the merits for some of the landowners' inverse condemnation claims against the defendants. On this record, we need not decide whether the district court committed reversible error in dismissing the other landowners' claims under the statute of limitations, because those other landowners have not demonstrated they were prejudiced by the summary judgment dismissal of those inverse condemnation claims. *See Erickson v. Brown*, 2008 ND 57, ¶¶ 20, 30, 37, 41, 747 N.W.2d 34 (sustaining pretrial dismissal of some claims where result of proceedings after trial demonstrated party was not prejudiced by earlier dismissal). We therefore do not further address the landowners' arguments about the statute of limitations.

## IV

[¶ 24] The landowners argue the district court erred in otherwise dismissing the claims of five individual landowners.

### A

[¶ 25] The landowners argue the district court erred in dismissing the claim of James Wang, an individual whose continued access to his land on an island was interrupted from April 23, 1997, to September 5, 1997, while a road was repaired. In rejecting Wang's claim, the district court said:

It has been found by the facts set forth in this decision that the temporary impairment of James Wang's access to his property was not a taking without just compensation by any government entity. When government impairs access to private property adjoining a public highway the proper test for determining whether there is a taking or damages is the reasonableness of the access remaining. *Boehm v. Backes* 493 N.W.2d 671, 674 (1992). As the court stated there:

> In situations where restrictions ... have been imposed upon the access of abutting owners, the question becomes one of whether or not, under the existing facts and circumstances, a reasonable means of access remains. If the abutter has free and convenient access to his property, and its means of ingress and egress are not substantially interfered with, he has no cause of complaint. *Id.*

For the short duration of time that his only access was by water it was reasonable for James Wang to access his property by boat. It is not uncommon for lake home owners to have their property on islands. More significantly, it was of a short duration and thereafter he had full access by highway. On this basis, the claim is subject to dismissal.

[¶ 26] A substantial impairment of established access is a taking. *Boehm v. Backes*, 493 N.W.2d 671, 673–74 (N.D.1992). If government action impairs existing access to private property, the test for the determination of a taking is the reasonableness of the remaining access. *Id.* at 674. Whether there is a substantial impairment of access is a question of fact. *Id.* at 674–75. We conclude the district court's findings about Wang's right of access are not clearly erroneous. We therefore conclude the court did not

err in dismissing his claim for access to his land.

### B

[¶ 27] The landowners argue the district court erred in denying claims by Gordon and Lillian Shafer and TBH Farms. After trial, the district court decided those claimed damages resulted from actions involving the Creel Bay Dike. The court also decided the Creel Bay Dike was a project by the Army Corps of Engineers and the City of Devils Lake, and those entities were not parties to this action. On this record, we conclude the court did not err in denying those claims.

### C

[¶ 28] The landowners argue the district court erred in denying a motion during trial by George Brown and Rodger and Constance Haugen to amend the complaint to include additional damages. A motion to amend a complaint lies within the sound discretion of the district court and will not be reversed on appeal absent an abuse of discretion. *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 10, 730 N.W.2d 841. A district court abuses its discretion if its decision is arbitrary, unreasonable, or unconscionable, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Id.* On this record, we conclude the court's denial of the motion to amend the complaint was not arbitrary, unreasonable, or unconscionable, and we therefore conclude the court did not abuse its discretion in denying the motion.

### V

[¶ 29] We affirm the judgment.

[¶ 30] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and Carol RONNING KAPSNER, JJ., concur.

[¶ 31] The Honorable MARY MUEHLEN MARING, J., disqualified herself subsequent to oral argument and did not participate in this decision.

### On Petition for Rehearing

SANDSTROM, Justice.

[¶ 32] In their petition for rehearing, the plaintiffs strenuously argue that they did not invite error by the district court. The defendants argue there was no error, but if there was, plaintiffs invited it. Defendants further argue that if there was uninvited error, it does not matter because it would not change the judgment in this case.

[¶ 33] After careful review, we conclude that even if we agreed with the plaintiffs that there was uninvited error on the part of the district court, it would not change the outcome. Therefore we modify the opinion and deny the petition for rehearing.

[¶ 34] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.