2009 ND 206

### In the Matter of Lila PETERSON'S DOGS.

**Lila Peterson, Petitioner and Appellant**

v.

**State of North Dakota, Respondent and Appellee.**

**No. 20090160.**

Supreme Court of North Dakota.

Dec. 15, 2009.

Justin J. Vinje (argued), Bismarck, ND, for petitioner and appellant.

Lloyd C. Suhr (argued), Assistant State's Attorney, Bismarck, ND, for respondent and appellee.

KAPSNER, Justice.

[¶ 1]   Lila Peterson appeals from a district court memorandum opinion and order finding she cannot provide adequate care for her dogs and ordering the State not to return the dogs to her.  Peterson argues the State did not have probable cause to initially confiscate the dogs, and the district court erred by finding she could not care for them.  We hold probable cause existed to confiscate Peterson's dogs, and the district court was not clearly erroneous to find she could not adequately care for them.  We affirm the district court order.

I.

[¶ 2]   On February 7, 2008, Burleigh County deputy sheriff James Hulm went to Peterson's home to investigate allegations regarding the mistreatment of dogs. Peterson showed Hulm the basement in which she raised chihuahuas and allowed him to photograph the area.  On March 1, 2008, several deputy sheriffs and Central Dakota Humane Society employees went to Peterson's home and removed forty-seven dogs from her possession.  Of the dogs confiscated, twenty-four were adult chihuahuas, approximately fifteen were puppy chihuahuas, and the remainder were family pets.

[¶ 3]   During the confiscation, Peterson signed two forms.  She signed a relinquishment of ownership form stating: "I ... voluntarily agree to relinquish ownership of ... dogs to the Burleigh County Sheriff's Department.  I understand that this donation is permanent and I have no further claims or interests in these animals or their offspring."  Peterson also signed a form entitled "Notice of Confiscation," providing the dogs were being confiscated un-

der N.D.C.C. § 36–21.1–06 and advising Peterson she had five days to contact the sheriff's department to redeem the dogs. Peterson sent a letter to the sheriff on March 6, 2008, demanding the immediate return of the dogs or a court hearing to determine whether the dogs were properly confiscated.

[¶ 4] On March 11, 2008, Peterson petitioned the district court for a hearing on the disposition of the dogs under N.D.C.C. § 36–21.1–06, which the district court then scheduled. The State moved the district court to cancel the hearing, arguing Peterson did not have the right to a hearing because she voluntarily relinquished ownership of the dogs. In support of its motion, the State attached the relinquishment of ownership form signed by Peterson. The district court found Peterson voluntarily relinquished ownership of the dogs and cancelled the hearing. Peterson appealed the district court's decision to this Court, and we found the district court erred in cancelling the hearing and remanded the case for further proceedings. See In the Matter of Lila Peterson's Dogs, 2008 ND 225, 758 N.W.2d 749.

[¶ 5] The district court held a hearing on two days in March and April 2009 to determine whether Peterson voluntarily relinquished the dogs and, if not, whether she could adequately care for them. Because the deputy sheriffs gave Peterson conflicting forms, the district court found she did not voluntarily relinquish the dogs. The district court then considered testimony regarding whether Peterson could adequately care for the dogs.

[¶ 6] Deputy Hulm testified he visited Peterson's house in February 2008 in response to a call from a veterinarian regarding a possible animal neglect case. Hulm stated he could smell a foul odor immediately upon entering the house. As he walked downstairs, Hulm testified the odor became stronger. When he entered the basement, Hulm stated he observed a utility room that had been converted into dog kennels. Hulm testified he observed newspaper on the floor in one corner of the room that the dogs had completely soiled. He also saw a water dish and food dish in another corner, with food scattered all over the floor. As he walked through the basement, Hulm testified he observed several kennels containing a mother chihuahua and puppies. In the last two kennels, Hulm stated he saw "all these chihuahua type dogs literally on top of one another. Just tons of them. And I asked [Peterson], I said: Well, how many dogs are in here, and she said: About 60. And then I kind of paused for a second and I asked her to clarify: So 60 meaning in the room total or 60 in these last two kennels, and that's when she said: 60 in the last two kennels." Hulm stated he could not see food or water in the last two kennels because "there was too many dogs. You couldn't see the floor of those two kennels. I mean, it was literally a dog on top of dog packed in one after another." Hulm testified the last two kennels did not have doors or gates allowing the chihuahuas to enter and exit, and the dogs were too short to jump over the kennel wall. He stated Peterson told him she had recently gotten rid of thirty additional dogs, so she apparently had over one hundred in the basement shortly before his visit. Hulm took photos of the basement kennels, which he forwarded to the sheriff's investigative unit. The State entered these photographs into evidence at the hearing.

[¶ 7] Two individuals who helped confiscate the dogs in March 2008 also testified. Deputy Lonny Quam testified that, when he arrived at Peterson's house, the dogs were not exposed to cold or inclement weather, and he saw no evidence that Peterson did not properly feed or water

them. Sue Buchholz, shelter director for the Central Dakota Humane Society, testified one mother chihuahua appeared dehydrated and several puppies needed supplemental feeding. Buchholz also stated a springer spaniel taken from the property had numerous bite wounds, was malnourished, and had to receive veterinary treatment. She testified the basement was too dark because there was no electric light, so the only light came through small basement windows. As to her general observations, Buchholz stated: "Just my feeling was way too many dogs for a small space and [the dogs] certainly weren't socialized and it certainly wasn't clean."

[¶ 8] Peterson testified on her own behalf. She stated she had seventy-five dogs in her basement when deputy Hulm visited in February 2008. Peterson admitted two photos taken by Hulm showed kennels without food or water, but stated she was simply busy on the day the deputy visited. Peterson testified she generally checked the food and water and cleaned the kennels three times a day. Peterson stated she kept the dogs in her basement during winter and had outdoor kennels for the dogs in summer. When the deputies confiscated her dogs in March 2008, Peterson testified she thought the dogs were being taken to be tested for disease and would be returned "when they got a clean bill of health."

[¶ 9] William Nieland, then president of the Bismarck Kennel Club, testified he examined Peterson's basement on the first day of the hearing in March 2009, and found it "perfectly satisfactory for chihuahuas." Nieland testified the kennels were clean, and the dogs present that morning had adequate food and water and were not exposed to cold or inclement weather. However, Nieland stated he was "not sure" whether the basement was large enough to raise seventy-five chihuahuas.

He also testified "I can't say" when asked whether the amount of food and water shown in the photos taken in February 2008 by deputy Hulm was adequate for seventy-five dogs.

[¶ 10] In its memorandum opinion and order, the district court relied "primarily on the testimony of Sue Buchholz" and found "that there were too many dogs in the small space provided for the dogs and that the area was not clean." Therefore, the district court concluded Peterson "cannot provide adequate care for the dogs" and ordered the State not to return them to her.

## II.

[¶ 11] Peterson argues the State did not have probable cause to confiscate her dogs. We disagree. Under N.D.C.C. § 36–21.1–06(1), "[a]ny sheriff, police officer, licensed veterinarian, or investigator may take custody of and care for any animal unjustifiably exposed to cold or inclement weather or not properly fed and watered." We have explained probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe an offense has been or is being committed. *Seela v. Moore*, 1999 ND 243, ¶ 6, 603 N.W.2d 480. Therefore, under N.D.C.C. § 36–21.1–06(1), probable cause to confiscate an animal exists when a sheriff, police officer, licensed veterinarian, or investigator knows of facts and circumstances sufficient to warrant a reasonable belief that the animal is being unjustifiably exposed to cold or inclement weather or not being properly fed and watered.

[¶ 12] Deputy Hulm testified he saw approximately sixty chihuahuas stacked on top of one another in two kennels, he could not see food or water in the kennels, and the dogs could not enter or exit the kennels on their own. Buchholz testified she

saw a dehydrated mother chihuahua and a malnourished springer spaniel. Based upon Hulm and Buchholz's observations, the State had probable cause to believe Peterson's dogs were not properly fed and watered and could legally confiscate the dogs under N.D.C.C. § 36–21.1–06(1).

### III.

[¶ 13] When the State confiscates an animal under N.D.C.C. § 36–21.1–06(1), it must immediately notify the owner "that the animal may be sold, or otherwise disposed of, pursuant to court order if the animal is not redeemed within five days from the date of the notice." N.D.C.C. § 36–21.1–06(3). Where an owner seeks to redeem the animal, "[b]efore the animal is returned to its owner, the court shall determine whether the owner . . . can provide adequate care for the animal. The court has ten days within which to make this determination." N.D.C.C. § 36–21.1–06(8). In its memorandum opinion, the district court found Peterson "cannot provide adequate care for the dogs" and ordered the State not to return them to her.

[¶ 14] On review, we will only reverse a district court's finding of fact if it was clearly erroneous. *Aasmundstad v. State*, 2008 ND 206, ¶ 16, 763 N.W.2d 748 ("In actions tried without a jury, we review a district court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a)."). A finding of fact is clearly erroneous if induced by an erroneous view of the law, no evidence exists to support the finding, or we are left with a definite and firm conviction the district court made a mistake. *Id.* "A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply that we may have viewed the evidence differently does not entitle us to reverse the court's findings of fact." *Id.*

[¶ 15] We hold the district court was not clearly erroneous to find Peterson cannot adequately care for her dogs. The testimony of Hulm and Buchholz not only established probable cause to confiscate the dogs, but also supported the district court's finding that Peterson cannot adequately care for them. Deputy Hulm testified he saw approximately sixty chihuahuas stacked on top of one another in two kennels, he could not see food or water in the kennels, and the dogs could not enter or exit the kennels on their own. Buchholz testified she saw a dehydrated mother chihuahua and malnourished springer spaniel, and several chihuahua puppies needed supplemental feeding after confiscation. Peterson correctly notes N.D.C.C. § 36–21.1–06(8) requires a district court determine whether an owner "can" adequately care for the animals, not whether the owner did adequately care for them. However, the Legislature's use of the present tense does not preclude courts from considering evidence of an owner's past care in making its determination. The past care provided by an owner, particularly the circumstances leading to the confiscation, may be relevant to whether the owner can adequately care for the animals. Thus, based upon Hulm and Buchholz's testimony, the district court was not clearly erroneous to find Peterson cannot provide adequate care to the large number of dogs confiscated by the State. While Nieland testified Peterson's facilities appeared adequate for raising chihuahuas, he did not testify the area was adequate for the number of dogs that were confiscated. In contrast, witnesses who saw the facilities on February 7 and March 1, the day the dogs were removed, indicated there were too many animals in the space. Relying on such testimony, the district court concluded Peterson had not established she can care for the animals she sought to have returned. A district court's

choice between two permissible views of the evidence is not clearly erroneous. *Aasmundstad*, 2008 ND 206, ¶ 16, 763 N.W.2d 748.

## IV.

[¶ 16] We hold probable cause existed to confiscate Peterson's dogs, and the district court was not clearly erroneous to find she could not adequately care for them. We affirm the district court order.

[¶ 17] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.