2010 ND 85

**Jeffrey L. SHEETS, Plaintiff and Appellant**

v.

**FARHART LAW FIRM, and Moody Farhart, personally, Defendants and Appellees.**

No. 20090231.

Supreme Court of North Dakota.

May 11, 2010.

Jeffrey L. Sheets (argued), self-represented, Minot, ND, plaintiff and appellant.

Tom P. Slorby (argued), Minot, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Jeffrey Sheets appeals from a district court decision finding he was entitled to $11,982.18 in additional compensation under the terms of an employment agreement, but offsetting this amount against $13,000 plus interest due under two promissory notes executed in favor of defendants Farhart Law Firm and Moody Farhart. We hold the district court's finding that Sheets was only entitled to $11,982.18 was not clearly erroneous and affirm the judgment in favor of defendants offsetting the two awards.

## I.

[¶ 2] Farhart and Sheets are both attorneys. In July 2004, Farhart contacted Sheets to ask whether Sheets was interested in moving to Minot and joining Farhart's law practice. Sheets agreed and signed a letter agreement regarding "Employment" drafted by Farhart. The agreement provided the name of Farhart's professional corporation would be changed to "Farhart & Sheets, P.C." ("Farhart & Sheets"), and Farhart would continue to personally own Farhart & Sheets "until such time as a written agreement is drafted and executed reflecting a change of ownership." The agreement also described how Sheets would be compensated:

> The firm will employ a two-system credit fund concerning fees based on the following percentages, to wit:
>
> a) You shall receive 100% of the fees on all files you are bringing into the office initially.
>
> b) You shall receive 80% fee credit on all files opened after July 1, 2004, by you wherein fees are billed and collected including cases taken on contingency fee basis.

c) You shall be entitled to receive 50% fee credit on all files opened after July 1, 2004, by me wherein fees are billed and collected including contingency fee files.

d) You will be entitled to receive 20% fee credit on all files presently open at my office wherein you render legal services thereon. If any of the files that are open go to trial, you will be entitled to receive 50% credit. I am excluding [four specific cases]. Also excluded are all open accounts to date and judgments entered of record. It is distinctly understood that the above files, judgments, and records shall be owned by me and/or the professional corporation.

The agreement did not address whether Sheets would receive fee credits on case files opened by any other attorneys subsequently hired by Farhart & Sheets. The agreement also did not explicitly state how the firm's expenses would be split, but an example indicated Sheets and Farhart would each pay 50 percent.

[¶ 3] The employment agreement also mentioned Farhart's future retirement plans. It stated Farhart's "primary concern" was closing out active files, after which he would "be in a position to discuss [Sheets] taking over the entire practice on [his] own." Finally, the employment agreement provided "either of us may terminate our association at any time." If either Sheets or Farhart terminated their association, the agreement called for accounts receivable collected within thirty-five days to be allocated according to the above compensation structure. However, after thirty-five days, the employment agreement stated all accounts receivable became an asset of Farhart & Sheets.

[¶ 4] After Sheets began working at Farhart & Sheets, the defendants loaned him $3,000 and $10,000, and he executed two promissory notes in their favor. Sheets also helped recruit a third attorney, Bonnie Humphrey, to join Farhart & Sheets in early 2005. Beginning in mid–2005, Sheets and Humphrey began negotiations with Farhart over the purchase of Farhart & Sheets. However, before the parties could agree to terms, Farhart terminated his professional association with both Sheets and Humphrey in October 2005. Two months later, Sheets filed a complaint against Farhart Law Firm [1] and Moody Farhart personally, claiming he was owed at least $50,000 for work he performed prior to the association being terminated. Sheets' complaint also claimed that, when he signed the employment agreement, he and Farhart formed a legal partnership. The defendants filed a counterclaim, alleging Sheets actually owed the firm over $11,000 under the employment agreement and $13,000 plus interest under the two promissory notes.

[¶ 5] The defendants moved for summary judgment in January 2007. The district court found Sheets and Farhart did not form a partnership because the employment agreement clearly provided Farhart was the sole owner of Farhart & Sheets. The district court also found Sheets owed $13,000 plus interest to the defendants under the promissory notes. Therefore, the district court granted summary judgment in favor of the defendants on those two issues. However, the district court found the parties disputed material facts about whether either party owed money to the other under the employment agreement. As a result, the district court denied summary judgment on the remainder of the parties' claims.

---

1. For purposes of this opinion, we assume both the parties and the district court refer to Farhart & Sheets, P.C. as "Farhart Law Firm."

[¶ 6]   In October 2008, the district court held a bench trial to determine whether either Sheets or Farhart Law Firm owed additional money to the other under the employment agreement.   Sheets generally testified Farhart & Sheets under-compensated him during his fifteen months with the firm.   Sheets stated the firm failed to compensate him for time he spent reviewing Farhart's active case files upon joining the firm.   He testified the firm's general ledger erroneously listed $6,000 as an advance rather than a client fee.   Sheets also testified the firm incorrectly determined the percentage of fee credits he was entitled to on numerous cases.   Sheets stated the firm charged him "far over what should have been my fair share of the expenses."   Sheets believed he and Farhart would split expenses pro rata "according to the income figures and the caseload that we each respectively had."   Finally, Sheets stated he deserved compensation for cases Humphrey brought to the firm. While Sheets acknowledged the employment agreement did not specifically provide he was entitled to fees for cases brought to Farhart & Sheets by attorneys other than Farhart, he stated: "I cannot understand how I could possibly be required to pay a share of the expenses for anybody else brought in and not receive a percentage of income."

[¶ 7]   Sheets also testified Farhart & Sheets failed to bill clients after August 2005 and thereby reduced the compensation to which he was rightfully entitled. While negotiating the purchase of the firm, Sheets stated he and Humphrey accessed Farhart & Sheets' computerized accounting records in early October 2005.   Sheets testified the records indicated Farhart & Sheets had failed to send out bills since early August 2005, which caused the firm's collections to drop dramatically.   Sheets submitted a graph printed from the firm's accounting records into evidence, which he stated demonstrated Farhart & Sheets' failure to bill clients during this period. Sheets testified he submitted bills to the firm's bookkeeper, Judith Bloms, from August to October 2005, and the firm would have been able to collect payments from the vast majority of his clients.   Because the employment agreement provided accounts receivable became the sole property of Farhart & Sheets more than thirty-five days after either he or Farhart terminated their association, Sheets stated the firm's failure to bill clients in a timely manner resulted in the firm getting to keep money he had rightfully earned.   In total, Sheets claimed Farhart & Sheets owed him over $150,000 in additional compensation and trust account distributions.   Sheets submitted a demonstrative exhibit showing how he calculated this amount, as well as other exhibits showing the specific cases on which he worked but allegedly did not receive proper fee credit.

[¶ 8]   Farhart testified that, when he drafted the employment agreement, he intended to split expenses equally with Sheets.   Farhart said he did not ask Sheets to review his active case files when Sheets joined the firm.   Farhart generally testified to a lack of knowledge regarding Farhart & Sheets' billing and accounting practices or how Sheets' compensation was calculated.   Rather, Farhart stated bookkeeper Bloms oversaw the billing and accounting.   Farhart testified he gave Bloms a copy of the employment agreement and she calculated Sheets' fee credits.

[¶ 9]   Bloms testified about the ordinary billing and accounting practices at Farhart & Sheets.   Bloms said she sent bills to clients based upon the attorneys' time sheets.   When clients were billed, Bloms testified she would enter a debit into the firm's computerized accounting program; when clients paid a bill, she would enter a credit.   For payroll, Bloms stated she

would first calculate the attorneys' fee credits, and she would then take the payroll sheet to the firm's accountant, who would calculate the proper payroll deductions. Bloms testified she determined the allocation of fee credits by referencing the attorneys' time sheets and looking at the date the case file was opened, as indicated by the case file number.

[¶ 10] Bloms testified Farhart & Sheets billed clients and received payments from August to October 2005 despite Sheets' claims otherwise. However, Bloms added the firm was adopting a new billing system during this period, so she was behind on entering information into the existing accounting program. Nevertheless, Bloms testified she always recorded debits and credits in the firm's checkbook balance sheet. With regard to Sheets' compensation, Bloms stated she reviewed Farhart & Sheets' accounting records at Farhart's request after Sheets sued the firm. Although the defendants' counterclaim alleged Sheets owed money under the employment agreement, Bloms testified she determined Farhart & Sheets actually owed Sheets an additional $1,307.25. Bloms created an exhibit demonstrating how she calculated this amount, which the defendants submitted into evidence. On cross-examination, Bloms admitted she "did not send out all the bills" from August to October 2005. She testified Farhart & Sheets had approximately $217,000 in accounts receivable on October 15, 2005. In response to questions from the district court, Bloms stated "accounts receivable" refers to amounts clients have been billed but not yet paid. Bloms testified she did not know the exact amount of accounts receivable when Farhart terminated his association with Sheets, nor what percentage of those accounts was owed to Sheets. Bloms stated Sheets did not perform any work for Farhart & Sheets that was not billed to clients.

[¶ 11] The district court found Sheets was not entitled to compensation for time he spent reviewing Farhart's active case files upon joining the firm. The employment agreement provided Sheets would be entitled to a 20 percent fee credit on Farhart's existing case files, if he "render[ed] legal services." The district court concluded reviewing case files was "not services performed on behalf of a client and, therefore, does not fit within the definition of 'legal services.'" In addition, the district court found the example in the employment agreement "clearly indicates" Sheets and Farhart would divide the firm's expenses equally "and not on a pro rata basis as urged by Sheets." Therefore, the district court concluded Sheets was not entitled to additional compensation because Farhart & Sheets rightly charged him 50 percent of the firm's expenses.

[¶ 12] Citing Bloms' testimony, the district court found Sheets was entitled to $1,307.25 in additional compensation, and he did not owe additional money to the defendants under the employment agreement. However, the district court found Sheets failed to prove his entitlement to any further compensation:

> [Sheets] attempted to show the amount of accounts receivable as of mid-October 2005 . . . but did not offer any evidence from which the Court could determine how much compensation credit he should be given for any of the amount of the accounts receivable. Furthermore, Defendant Farhart, through Judith Bloms, denied that bills were not sent out and disputed the amount of receivables claimed by Sheets.

[¶ 13] Finally, the district court held the employment agreement unconscionably denied Sheets compensation for files opened by Humphrey. Farhart drafted the agreement, which provided: "You shall

be entitled to receive 50% fee credit on all files opened after July 1, 2004, by me wherein fees are billed and collected including contingency fee files." While the district court found the employment agreement did not explicitly require the firm compensate Sheets for files opened by any attorney other than Farhart, the district court concluded an interpretation of the agreement in this manner would be "patently unfair and unconscionable" because Sheets was responsible for 50 percent of the firm's expenses. Therefore, the district court held Sheets was entitled to 50 percent of the firm's share of Humphrey's client fees. Neither party appealed this holding.

[¶ 14] In conclusion, the district court stated:

In a pretrial order, the Court granted plaintiff's motion to compel discovery of the defendant's tax returns and business records so that an accounting could be performed to determine whether or not Sheets was properly compensated under the terms of the employment agreement. No accounting was completed. Bloms testified regarding how the law firm maintained and billed its accounts and how the attorneys' compensation was calculated. Sheets testified as to how he believed Bloms' calculations were incorrect. However, while he raised several legitimate questions regarding billing and compensation which might have been answered with an accounting, the evidence he presented regarding his compensation claims consisted primarily of guesswork and speculation. Without the benefit of an accounting, Sheets has failed to prove his claims that he was not properly compensated under the terms of [the employment agreement].

In total, the district court found Sheets was entitled to $11,982.18: $10,674.93 for fees collected on files opened by Humphrey plus $1,307.25 "as the amount Bloms determined when she recalculated the amount claimed by the defendants in the counterclaim." However, as the district court had previously entered summary judgment on defendants' counterclaim for repayment of the promissory notes, the district court entered judgment in favor of the defendants for $6,338.21.

## II.

[¶ 15] We recently stated our standard of review on appeals from bench trials in *In re Peterson's Dogs*, 2009 ND 206, ¶ 14, 776 N.W.2d 52:

On review, we will only reverse a district court's finding of fact if it was clearly erroneous. *Aasmundstad v. State*, 2008 ND 206, ¶ 16, 763 N.W.2d 748 ("In actions tried without a jury, we review a district court's findings of fact under the clearly erroneous standard of N.D.R.Civ.P. 52(a)."). A finding of fact is clearly erroneous if induced by an erroneous view of the law, no evidence exists to support the finding, or we are left with a definite and firm conviction the district court made a mistake. *Id.* "A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply that we may have viewed the evidence differently does not entitle us to reverse the court's findings of fact." *Id.*

This Court also gives due regard to a district court's opportunity to judge the credibility of witnesses. *Spitzer v. Bartelson*, 2009 ND 179, ¶ 23, 773 N.W.2d 798.

[¶ 16] Sheets argues the district court's finding that Farhart & Sheets only owed him an additional $11,982.18 was clearly erroneous because he presented ample evidence establishing the firm: did not give him proper fee credit on numerous case files, unjustly failed to bill clients from

August to October 2005, and had suspiciously large accounts receivable at the time Farhart terminated their association. Sheets submitted several exhibits he claims proves these facts, including an annotated copy of the firm's general ledger and various print-outs from Farhart & Sheets' accounting records. Finally, Sheets argues he submitted a demonstrative exhibit showing the amount Farhart & Sheets owed him, and the district court was clearly erroneous to ignore this evidence.

■ [¶ 17]  We hold the district court's findings of fact are not clearly erroneous and decline to overturn its decision. Sheets testified Farhart did not request that he review the active case files upon joining the firm, and he did not take any concrete action on the cases he reviewed. Therefore, the district court's finding that he did not perform "legal services" is not clearly erroneous.  The district court's finding that Sheets and Farhart would split the firm's expenses equally is not clearly erroneous.  The employment agreement contained a single reference to expenses, and that reference indicated Sheets and Farhart would each pay 50 percent.  Bloms' testimony supports the district court's finding that Sheets was only entitled to $1,307.25 in additional client fees under the employment agreement.  While Sheets' testimony and exhibits contradicted Bloms, we give due regard to the district court's opportunity to judge witnesses' credibility, *Spitzer*, 2009 ND 179, ¶ 23, 773 N.W.2d 798, and a "district court's choice between two permissible views of the weight of the evidence is not clearly erroneous. . . ." *Aasmundstad*, 2008 ND 206, ¶ 16, 763 N.W.2d 748.

[¶ 18]  We hold the district court's finding that Sheets was entitled to $11,982.18 in additional compensation was not clearly erroneous because the finding is supported by the evidence.  In addition, as the district court previously granted summary judgment on the portion of defendants' counterclaim regarding the promissory notes, we affirm the judgment awarding $6,338.21 to the defendants.

### III.

[¶ 19]  We hold the district court's finding that Sheets was only entitled to $11,982.18 in additional compensation under the employment agreement was not clearly erroneous and affirm the judgment offsetting this amount against the amounts due on the promissory notes, resulting in judgment in favor of defendants in the amount of $6,338.21.

[¶ 20] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.