2015 ND 60

**Robert W. IRWIN and Donna Irwin, Plaintiffs and Appellants**

v.

**CITY OF MINOT, Defendant and Appellee.**

**No. 20140217.**

Supreme Court of North Dakota.

March 24, 2015.

Richard P. Olson (argued), Andrew Forward (appeared), and Rebecca L. Hoglund

(on brief), Minot, ND, for plaintiffs and appellants.

Richard H. McGee (argued) and Sara E. Ruliffson (on brief), Minot, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Robert and Donna Irwin appealed from a summary judgment dismissing their inverse condemnation claim against the City of Minot. We reverse and remand for further proceedings.

I

[¶ 2] Robert and Donna Irwin own 8.12 acres of property located in Ward County. In 2011, the Souris River in Ward County flooded. The City of Minot ("City") acted to combat the flood by constructing emergency earthen dikes running along municipal streets. Contractors were hired by the City to remove clay to construct the dikes from Darrell Sedevie's property, whose land bordered the Irwins' property. The City contracted with Sedevie for removal of the clay, and paid sixty-five cents per cubic yard for 20,000 cubic yards of clay. The contractors entered the Irwins' land to access the Sedevie property, removed an undetermined amount of clay and topsoil from both the Sedevie and Irwin properties, and used the materials to construct the emergency dike. Damage to the Irwins' property included destruction of a cement slab, barn, damage to a fence, and destruction of native prairie grassland. The City did not contract, obtain permission, or pay compensation to the Irwins for removal of the clay from their property.

[¶ 3] The Irwins filed a claim against the City alleging inverse condemnation under Article I, Section 16 of the North Dakota Constitution, and moved for summary judgment. They argued the City took deliberate action to remove soil and damage the property, the clay was re-moved for public use, the removal of the clay was the proximate cause of the damage to their property, and any defense that the City was acting under its police power or is protected from suit through sovereign immunity is inapplicable. The City moved for summary judgment to dismiss the claim. The City argued that the contractor's removal of the clay was an exercise of its police power to act in a sudden emergency and did not constitute a taking under eminent domain. The City also argued it was not authorized to compensate the Irwins as a matter of law in exercising its police powers, and is statutorily immune from liability for damages resulting from the contractor's actions.

[¶ 4] The district court granted the City's motion for summary judgment. In its findings, the district court stated the City's actions did take and damage the Irwins' property without compensation, but the City acted under its police power in an emergency rather than under the power of eminent domain, and the action to protect the health, safety, and general welfare of its citizens did not require compensation to property owners. The Irwins' subsequent motion for supplemental findings or reconsideration of the judgment was denied.

II

[¶ 5] The party moving for summary judgment must show that there are no genuine issues of material fact and that the case is appropriate for judgment as a matter of law. *Beckler v. Bismarck Public School Dist.*, 2006 ND 58, ¶ 7, 711 N.W.2d 172. We review a district court's grant of summary judgment de novo, and examine the evidence in a light most favorable to the opposing party. *Knutson v. City of Fargo*, 2006 ND 97, ¶ 8, 714 N.W.2d 44. "All inferences must be

viewed in favor of the non-moving party." *Id.*

[¶ 6] The Fifth Amendment to the United States Constitution guarantees that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. "Through its power of eminent domain, the State has the authority to 'take' or 'damage' private property for public use so long as it compensates the private property owner for the taking or damaging." *Eck v. City of Bismarck,* 283 N.W.2d 193, 197 (N.D.1979) (citing N.D. Const. art. I, § 14). "When the State takes or damages private property without first commencing eminent-domain proceedings, in order to obtain 'just compensation' the property owner must take the initiative by commencing an action for inverse condemnation." *Id.* "Whether there has been a taking of private property for public use is a question of law which is fully reviewable on appeal." *City of Minot v. Boger,* 2008 ND 7, ¶ 16, 744 N.W.2d 277.

[¶ 7] " 'Inverse condemnation actions are a property owner's remedy, exercised when a public entity has taken or damaged the owner's property for a public use without the public entity's having brought an eminent domain proceeding.' " *Aasmundstad v. State,* 2008 ND 206, ¶ 15, 763 N.W.2d 748 (citing *Knutson,* 2006 ND 97, ¶ 9, 714 N.W.2d 44). "To establish an inverse condemnation claim, a property owner must prove a public entity took or damaged the owner's property for a public use and the public use was the proximate cause of the taking or damages." *Aasmundstad,* 2008 ND 206, ¶ 15, 763 N.W.2d 748.

[¶ 8] At common law, a public entity can exercise a taking without compensating a property owner when acting under its police powers. *Bowditch v. Boston,*

101 U.S. 16, 18–19, 25 L.Ed. 980 (1879). "[T]he common law had long recognized that in times of imminent peril—such as when fire threatened a whole community— the sovereign could, with immunity, destroy the property of a few that the property of many and the lives of many more could be saved." *United States v. Caltex,* 344 U.S. 149, 154, 73 S.Ct. 200, 97 L.Ed. 157 (1952). This Court recognized the principle, stating, "[t]he State or the municipality may, in the exercise of police power, exact of property owners uncompensated submission of their property in the protection of public health, safety, or morals, but such use or injury of private property under the police power is uncompensated in this State only where such power is exercised to meet sudden emergencies." *Wilson v. City of Fargo,* 141 N.W.2d 727, 728 (N.D.1965) (syllabus by the Court 4).

[¶ 9] "Clear in theory but often cloudy in application, the distinction between the State's police power and its power of eminent domain has troubled this court in the past." *Eck,* 283 N.W.2d at 198. Federal courts have adopted the "doctrine of necessity" to absolve the State of compensating a party for lost or damaged property. *TrinCo Inv. Co. v. U.S.,* 722 F.3d 1375, 1378 (Fed.Cir.2013). The doctrine applies, "only when there is an imminent danger and an actual emergency giving rise to actual necessity." *Id.* When a taking is made by a public entity in a sudden emergency without compensation, the existing precedent requires the State show an actual necessity to prevent imminent peril. California articulates this standard:

[T]he "police power" doctrine "[g]enerally * * * operates in the field of regulation," rendering "damages" occasioned by the adoption of administrative or legislative provisions noncompensable . . . ; this doctrine of noncompensable loss

comes into play in connection with more direct "taking" or "damaging" of property only under "emergency" conditions; i.e., when damage to private property is inflicted by government "under the pressure of public necessity and to avert impending peril."

*Holtz v. Superior Court,* 3 Cal.3d 296, 90 Cal.Rptr. 345, 475 P.2d 441, 446 (1970)(quoting *Rose v. California,* 19 Cal.2d 713, 123 P.2d 505, 515 (1942); *House v. Los Angeles Flood Control District,* 25 Cal.2d 384, 153 P.2d 950, 953 (1944)). The U.S. Supreme Court has similarly defined this defense from compensation by requiring proof of actual necessity to forestall "other grave threats to the lives and property of others." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1029 n. 16, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)(citing *Bowditch v. Boston,* 101 U.S. 16, 18–19, 25 L.Ed. 980 (1879)).

 [¶ 10] In this case, there is no dispute over the need to construct earthen dikes to protect the City from flooding. But, the record includes evidence that prior to the flood, the City contracted with property owners for clay to be used in constructing the dikes. Clay was available in other sites located around Minot, and on the Sedevie property specifically. We review the evidence in the light most favorable to the party opposing the motion, and a question of fact exists as to whether the imminent danger facing the City gave rise to an actual necessity to take the Irwins' property. In this case, the district court erred in ordering summary judgment.

### III

 [¶ 11] The City argues that the proximate cause of the taking and damage to the Irwins' property was not in construction of the emergency dike, but in the negligence of the contractors in failing to follow instructions. Because we conclude the district court erred in ordering summary judgment and remand for a determination on the merits, this issue is not certain to arise on remand. We need not address issues not certain to arise on remand. *Jaste v. Gailfus,* 2004 ND 94, ¶ 18, 679 N.W.2d 257.

### IV

[¶ 12] The judgment of the district court is reversed. We remand for further proceedings.

[¶ 13] CAROL RONNING KAPSNER, LISA FAIR McEVERS and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 14] I agree we reverse and remand.

[¶ 15] I write separately to note that on remand, the district court, in the first instance, must review the framework of its analysis. Can a police power emergency doctrine justify uncompensated taking of property here? Reliance on a type of governmental or sovereign immunity appears questionable in view of *Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D.1974), and *Bulman v. Hulstrand Constr.,* 521 N.W.2d 632 (N.D.1994).

[¶ 16] The Constitution of North Dakota provides:

Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner, unless the owner chooses to accept annual payments as may be provided for by law.

N.D. Const. art. I, § 16.

[¶ 17] Perhaps in a genuine emergency, prior court-related action may not be possible. But even if that is the case, does it follow that because it is not possible to

comply with all of a constitutional provision, government does not need to comply with any of the constitutional provision?

[¶ 18] Usually, the emergency takings doctrine is applied to property that must be taken because of its location in a case of flooding or fire. Here, clay was needed and could have been taken from many locations, but it was taken from the plaintiff's property. Does it make sense that the one property owner should have to bear the entire burden? If the city needed lumber because of the emergency, could it just have gone and taken lumber from one lumber yard without paying? Could the City have decided to get the lumber by randomly tearing down someone's house and then refusing to compensate the owner? Does it matter that the City went outside the city to seize the clay?

[¶ 19] DALE V. SANDSTROM