2017 ND 231

William S. WILKINSON; Ann L. Nevins and Amy L. Perkins as Personal Representative for the Estate of Dorothy A. Wilkinson; Barbara Caryl Materne, l Trusted the Petty Living Trust; Charlie R. Blaine and Vanessa E. Blaine, as Co-Trustees of the Charlie R. Blaine and Vanessa E. Blaine Revocable Trust; Lois Jean Patch, life tenant; and Lana J. Sundahl, Linda Joy Weigel, Deborah J. Goetz, Marva J. Will, Ronald J. Patch, Michael Larry Patch, and Jon Charles Patch, Remaindermen, Plaintiffs, Appellants and Cross-Appellees

v.

The BOARD OF UNIVERSITY AND SCHOOL LANDS of the State of North Dakota; EOG Resources, Inc., XTO Energy Inc., Defendants and Appellees

and

Petrogulf Corporation, and all other persons unknown who have or claim an interest in the property described in the Complaint, Defendants

and

Brigham Oil & Gas, LLP and Statoil Oil & Gas LP, and EOG Resources, Inc., Defendants, Appellees and Cross-Appellants

and

North Dakota State Engineer Intervenor and Appellee

No. 20160199

Supreme Court of North Dakota.

Filed 9/28/2017

Joshua A. Swanson (argued) and Robert B. Stock (appeared), Fargo, N.D., for plaintiffs, appellants and cross-appellees William S. Wilkinson; Ann L. Nevins and Amy L. Perkins as Personal Representative for the Estate of Dorothy A. Wilkinson; Barbara Caryl Materne, 1 Trusted the Petty Living Trust; Charlie R. Blaine and Vanessa E. Blaine, as Co-Trustees of the Charlie R. Blaine and Vanessa E. Blaine Revocable Trust; Lois Jean Patch, life tenant; and Lana J. Sundahl, Linda Joy Weigel, Deborah J. Goetz, Marva J. Will, Ronald J. Patch, Michael Larry Patch, and Jon Charles Patch, Remaindermen.

Jennifer L. Verleger (argued) and Hope L. Hogan (on brief), Bismarck, N.D., for defendants and appellees The Board of University and School Lands of the State of North Dakota; and North Dakota State Engineer, intervenor and appellee.

Lyle W. Kirmis (argued), Bismarck, N.D., for defendant and appellee Brigham Oil & Gas, LLP n/k/a Statoil Oil & Gas LP.

Michael D. Schoepf (argued) and Lawrence Bender (on brief), Bismarck, N.D., for defendant and appellee EOG Resources, Inc.

Michael J. Mazzone (on brief), Houston, TX, for defendant and appellee XTO Energy, Inc.

Craig C. Smith (on brief) and Paul J. Forster (on brief), Bismarck, N.D., amicus curiae North Dakota Petroleum Council.

Uriah J. Price (on brief), Bozeman, MT, amicus curiae North Dakota Petroleum Council.

McEvers, Justice.

[¶ 1] William Wilkinson and the other plaintiffs appeal and Statoil & Gas, LP and EOG Resources, Inc. cross-appeal from a summary judgment determining the Board of University and School Lands of the State of North Dakota ("Land Board") owns certain property below the ordinary high watermark of the Missouri River. Wilkinson argues the district court erred

in determining ownership of the mineral interests. We reverse and remand.

## I

[¶ 2] J.T. Wilkinson and Evelyn M. Wilkinson acquired title to property located in Williams County described as:

Township 153 North, Range 102 West
Section 12: SW1/4
Section 12: S1/2NW1/4, excepting that portion which constitutes the right-of-way of the BNSF Railway Company
Section 13: Farm Unit No. 312 in the Buford-Trenton Project

In 1958, the Wilkinsons conveyed the property to the United States for construction and operation of the Garrison Dam and Reservoir, but they reserved the oil and gas rights in and under the property. The plaintiffs are the Wilkinsons' successors in interest.

[¶ 3] In 2012, the plaintiffs sued the Land Board to determine ownership of the minerals in and under the property, alleging they own the mineral interests. The plaintiffs also sued Brigham Oil & Gas, LLP and EOG Resources, Inc. to determine their rights, alleging Brigham received an oil and gas lease from the State and EOG received an oil and gas lease from the plaintiffs.

[¶ 4] The Land Board answered and counterclaimed, requesting the district court determine ownership of the property below the ordinary high watermark in its favor. The Land Board also claimed the plaintiffs were required to join XTO Energy, Inc. as a party because it holds an oil and gas lease issued by the Land Board.

[¶ 5] EOG answered and filed a cross-claim against the Land Board and Brigham, requesting the district court determine the plaintiffs own the disputed minerals and EOG owns a leasehold estate. Brigham answered and filed a counter-claim and cross-claim against EOG, requesting the court decide the Land Board owns the minerals and Brigham has rights to lease oil and gas.

[¶ 6] The plaintiffs moved for leave to amend the pleadings to add additional defendants and claims. The district court granted the motion. The plaintiffs filed an amended complaint adding Statoil Oil & Gas LP and XTO Energy, Inc. as defendants. They alleged Statoil acquired Brigham and held an oil and gas lease from the Land Board. They also added several new claims against the defendants, including a takings claim against the Land Board; a claim under 42 U.S.C. § 1983 against the Land Board for depriving them of their constitutional rights; and claims for conversion, unjust enrichment, civil conspiracy, and injunctive relief against all of the defendants. Statoil and XTO answered and counterclaimed. The State Engineer moved to intervene as a defendant, the court granted the motion, and the State Engineer filed an answer.

[¶ 7] The Land Board and State Engineer (collectively "State") moved for summary judgment, requesting the court determine that the State holds title to the bed of the Missouri River up to the current ordinary high watermark and that the disputed property is located below the current ordinary high watermark. The State also argued the court does not have subject matter jurisdiction because the plaintiffs failed to exhaust their administrative remedies, no taking occurred, and the 42 U.S.C. § 1983 claim was improper.

[¶ 8] The plaintiffs responded, arguing the motion should be denied because the property is not part of the State's sovereign lands, there was no navigable body of water on the property at the time of statehood, the surface property was purchased by the United States as part of the Garrison Project, the property was flooded by

Lake Sakakawea, the property is located above the historical ordinary high watermark, and they alleged sufficient facts to support their takings claim. Statoil also responded to the summary judgment motion, arguing that property under Lake Sakakawea is not sovereign land owned by the State because the lake is man-made and was not navigable at the time of statehood and that the disputed property is located outside Lake Sakakawea and below the current ordinary high watermark of the Missouri River. XTO responded and joined the State's request that the court decide the State holds title to the disputed minerals.

[¶ 9] After a hearing, the district court granted the State's motion for summary judgment. The court decided the State owns the minerals and surface of the disputed property and dismissed all of the plaintiffs' claims. The court explained the State owns sovereign lands, which are defined as those areas within the ordinary high watermark of navigable lakes and streams; the Missouri River is not distinguishable from Lake Sakakawea; the Missouri River was navigable at the time of statehood; and the disputed property is located west of the Highway 85 bridge and therefore is within the Missouri River and not a part of Lake Sakakawea. The court concluded the State holds the title of beds of navigable waters up to the current ordinary high watermark; the property is currently below the ordinary high watermark; the State's title to oil and gas below the ordinary high watermark shifts with changing conditions, whether naturally or artificially occurring; and therefore both the surface and minerals of the property are sovereign land belonging to the State. The court dismissed the plaintiffs takings claims, concluding no uncompensated taking occurred because the plaintiffs were not denied the right to lease and produce

minerals in the past. Judgment was entered.

## II

[¶ 10] Our standard of review for a district court's decision to grant summary judgment is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 6, 892 N.W.2d 193 (quoting *Markgraf v. Welker*, 2015 ND 303, ¶ 10, 873 N.W.2d 26).

## A

[¶ 11] The district court granted summary judgment concluding "the Property, both surface and mineral interests, is determined to be sovereign land of the State of North Dakota."

[¶ 12] The plaintiffs sued to quiet title to the minerals underlying the property. They requested declaratory relief, including "a declaration by the Court that the State of North Dakota does not own title to the minerals [sic] interests in the Property owned by the Plaintiffs[.]" The plaintiffs did not claim they have a property interest in the surface estate. The Land Board counterclaimed and requested a judgment "ruling that neither the Plaintiffs nor any lessee of Plaintiffs holds any interests in the property described in the Amended Complaint which is located below the Missouri River's ordinary high watermark," and "quieting title in the State to all property claimed by Plaintiffs in the Amended Complaint." (Emphasis added.) The State Engineer answered the amended complaint and requested "[a] judgment ruling that the Plaintiffs do not hold any interests in the Property that is located below the Missouri River's [ordinary high watermark]," and "quieting title in the State of North Dakota, through the [State Engineer] and Land Board, to all property below the [ordinary high watermark] of the Missouri River as claimed by Plaintiffs in the Complaint." (Emphasis added.)

[¶ 13] Although the parties only requested the district court decide ownership of the mineral interests, the court also decided ownership of the surface estate when it granted summary judgment. The Wilkinsons conveyed the surface property to the United States in 1958 by warranty deed and reserved all oil and gas rights. "When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties, and a declaration may not prejudice the rights of persons not parties to the proceeding." N.D.C.C. § 32-23-11. The United States appears to have an interest in the property that would be affected by the district court's declaration that the State owns both the surface and the minerals of this property. See 43 U.S.C. §§ 1311, 1313 (the Submerged Lands Act confirms and recognizes the states' title to and ownership of lands beneath navigable waters, but exempts all tracts or parcels of land which were lawfully and expressly acquired by the United States from any person in·whom title had vested or were acquired by the United States by eminent domain proceedings, purchase, or otherwise in a proprietary capacity). The United States was not a party to this proceeding. The district court could not decide ownership of the surface estate. See Wilhite v. Cent. Inv. Props., 409 N.W.2d 348, 355 (N.D. 1987); see also J.P. Furlong Enters., Inc. v. Sun Expl. & Prod. Co., 423 N.W.2d 130, 140 n.30 (N.D. 1988) (refusing to decide ownership of the bed of a new channel of the Missouri River formed after the United States Corps of Engineers acquired land and dug a trench, changing the course of the Missouri River, when the United States was not a party to the action). The district court erred in determining ownership of the surface estate.

B

[¶ 14] The district court considered the equal footing doctrine and this Court's prior case law and decided the State owns the mineral interests at issue in this case. However, after the district court entered summary judgment and while the case was pending, N.D.C.C. ch. 61-33.1 was enacted and governs mineral rights of land inundated by the Pick-Sloan Missouri Project dams. See 2017 N.D. Sess. Laws ch. 426.

[¶ 15] Section 61-33.1-02, N.D.C.C., governs mineral ownership of land inundated by the Pick-Sloan Missouri basin project dams, stating:

The state sovereign land mineral ownership of the riverbed segments inundated by Pick-Sloan Missouri basin project

dams extends only to the historical Missouri riverbed channel up to the ordinary high water mark. The state holds no claim or title to any minerals above the ordinary high water mark of the historical Missouri riverbed channel inundated by Pick-Sloan Missouri basin project dams, except for original grant lands acquired by the state under federal law and any minerals acquired by the state through purchase, foreclosure, or other written conveyance. Mineral ownership of the riverbed segments inundated by Pick-Sloan Missouri basin project dams which are located within the exterior boundaries of the Fort Berthold reservation and Standing Rock Indian reservation is controlled by other law and is excepted from this section.

The "historical Missouri riverbed channel" is defined as:

[T]he Missouri riverbed channel as it existed upon the closure of the Pick-Sloan Missouri basin project dams, and extends from the Garrison Dam to the southern border of sections 33 and 34, township 153 North, range 102 West which is the approximate location of river mile marker 1,565, and from the South Dakota border to river mile marker 1,303.

N.D.C.C. § 61-33.1-01(2). The statutory provisions also provide a procedure for determining the ordinary high watermark of the historical Missouri riverbed channel. *See* N.D.C.C. §§ 61-33.1-03, 61-33.1-05.

[¶ 16] The plaintiffs argue there is no possible outcome under N.D.C.C. ch. 61-33.1 that can result in the State owning the disputed minerals and the case should be remanded to the district court to apply the new statutory provisions.

[¶ 17] Generally, we apply the law in effect when the cause of action arose. *See White v. Altru Health Sys.*, 2008 ND 48, ¶ 10, 746 N.W.2d 173; *State v. Flatt*, 2007 ND 98, ¶ 9, 733 N.W.2d 608. However, when a law is enacted or amended while an appeal is pending and it applies retroactively, courts generally apply the new law even if it affects the outcome of the case. *See, e.g., Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995); *United States v. Schooner Peggy*, 5 U.S. 1 Cranch 103, 110, 2 L.Ed. 49 (1801); *Vitetta v. Corrigan*, 240 P.3d 322, 326 (Colo. Ct. App. 2009); *Twomey v. Carlton House of Providence, Inc.*, 113 R.I. 264, 320 A.2d 98, 102 (1974). "When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Plaut,* at 226, 115 S.Ct. 1447.

[¶ 18] "A statute is applied retroactively when it is applied to a cause of action that arose prior to the effective date of the statute." *Lehman v. State*, 2014 ND 103, ¶ 11, 847 N.W.2d 119. A statute applies retroactively if it attaches a new legal consequence or responsibility to past matters by operating "on transactions which have already occurred, on rights or obligations which existed before its enactment, or on a cause of action that arose prior to the effective date of the statute." *Klein v. Klein*, 2016 ND 153, ¶ 7, 882 N.W.2d 296 (citations and quotations omitted). Whether a statute applies retroactively is a question of law. *Id.* at ¶ 4.

[¶ 19] Chapter 61-33.1, N.D.C.C., became effective on April 21, 2017. The proceedings in this case began in 2012, and the court granted summary judgment in May 2016. Chapter 61-33.1, N.D.C.C., only applies to this case if it applies retroactively. The bill which enacted N.D.C.C. ch. 61-33.1, states the chapter "is retroactive to the date of closure of the Pick-Sloan Mis-

souri basin project dams. The ordinary high water mark determination under this Act is retroactive and applies to all oil and gas wells spud after January 1, 2006, for purposes of oil and gas mineral and royalty ownership." 2017 N.D. Sess. Laws ch. 426, § 4. We conclude N.D.C.C. ch. 61-33.1 applies retroactively.

[¶ 20] The district court did not have an opportunity to consider these statutory provisions when it decided ownership of the disputed minerals. Because N.D.C.C. ch. 61-33.1 applies retroactively and the district court did not have an opportunity to consider these provisions, we remand for the district court to determine whether N.D.C.C. ch. 61-33.1 applies and governs ownership of the minerals at issue in this case.

### C

[¶ 21] The plaintiffs argue the district court erred in ruling the State's action did not violate the takings clause. They claim neither the State nor the federal government paid for the minerals, the property was flooded as a result of government action, and the State must compensate owners for property taken as a result of artificial changes to the ordinary high water mark.

[¶ 22] The Fifth Amendment of the United States Constitution declares private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. Article I, § 16 of the North Dakota Constitution also declares that "[p]rivate property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner...." The State has the authority to "take" or "damage" private property for public use through its power of eminent domain if it compensates the property owner for the taking or damage. *Irwin v. City of Minot*,

2015 ND 60, ¶ 6, 860 N.W.2d 849. "[T]he obligation of the state to pay just compensation to the owner for the taking of or for damages to his property is, in effect, a contract to compensate for the damages." *Hager v. City of Devils Lake*, 2009 ND 180, ¶ 34, 773 N.W.2d 420 (quoting *Eck v. City of Bismarck*, 283 N.W.2d 193, 199 (N.D. 1979)). Whether there has been a taking of private property for public use is a question of law. *Irwin*, at ¶ 6.

[¶ 23] The district court dismissed the plaintiffs' taking claims, ruling:

> [B]oth parties agree that a fundamental property right, when considering minerals, is the ability to lease and produce those minerals. Plaintiffs allege they have been denied that right by the State Defendants' assertion of title. This is untrue. Plaintiffs have leased the minerals to the Property numerous times in the past 60 years. Thus, even where the State did not properly assert title, the Plaintiffs have not been denied the right to lease and produce minerals. Therefore, no uncompensated taking has occurred under either the United States or North Dakota Constitutions.

[¶ 24] Mineral interests in Williams County, in the oil-producing Bakken formation, have value. *See Jacobs-Raak v. Raak*, 2016 ND 240, ¶ 12, 888 N.W.2d 770 (stating it would be disingenuous to believe mineral interests in a county in the Bakken formation have little or no value). There is undisputed evidence the plaintiffs have leased the minerals numerous times since they conveyed the surface property to the United States. If the district court determines the State owns the minerals, the plaintiffs will be deprived of the mineral interests. The federal government compensated the plaintiffs for the surface property, but the plaintiffs have not been compensated for the mineral interests. The plaintiffs are entitled to compensation if

the government's actions result in a "taking" of the mineral interests. *See Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 31-34, 133 S.Ct. 511, 184 L.Ed.2d 417 (2012) (stating permanent physical occupation of property authorized by government is a taking, and government-induced flooding can constitute a taking); *Tarrant Reg'l Water Dist. v. Gragg*, 43 S.W.3d 609, 620-21 (Tex. Ct. App. 2001) (holding flooding of property will be considered a taking if the flooding after the construction of a reservoir was greater than it previously had been).

[¶ 25] The district court erred in determining there was no taking because the plaintiffs leased the minerals during the period before the State claimed ownership of the mineral interests. We reverse the district court's dismissal of the plaintiffs' takings claims. The court must reconsider this issue on remand if it decides the State owns the disputed minerals.

**D**

 [¶ 26] In considering the issues on remand, the district court must be careful not to make findings about disputed factual issues without holding a trial. Summary judgment is not appropriate if there are genuine issues of material fact or if reasonable differences of opinion exist as to the inferences that can reasonably be drawn from undisputed facts. *Hamilton v. Woll*, 2012 ND 238, ¶ 9, 823 N.W.2d 754.

[¶ 27] The plaintiffs argue the district court made findings on disputed facts, including whether the property was flooded as a result of the Garrison Project and Lake Sakakawea. The district court said:

Plaintiffs claim that because the Property was purchased by the Army Corps of Engineers for the Garrison Dam project it is part of Lake Sakakawea. There is no dispute that the Property was purchased by the Corps for the Garrison

Dam project. There is also no dispute, however, that the Corps purchased excess land beyond what was necessary. Thus, the court disagrees that the purchase of the Property dictates whether the Property is considered part of Lake Sakakawea.

Additionally, review of aerial photography for the years 1958, 1995, 2003, 2004, 2005, 2006, 2009, 2010, 2011, 2012, and 2014 clearly shows that the boundaries of Lake Sakakawea are not fixed, but move each year, and that the area west of the Highway 85 bridge is within the Missouri River rather than Lake Sakakawea.

[¶ 28] Whether the property at issue was flooded as a result of government action and is part of Lake Sakakawea is a factual issue the parties dispute. This Court has explained summary judgment is not an opportunity to conduct a mini-trial. *Hamilton*, 2012 ND 238, ¶ 13, 823 N.W.2d 754. "This Court has repeatedly held that summary judgment is inappropriate if the court must draw inferences and make findings on disputed facts to support the judgment." *Id.* (quoting *Farmers Union Oil Co. v. Smetana*, 2009 ND 74, ¶ 10, 764 N.W.2d 665). The district court erred in making findings on disputed facts to support summary judgment, and we caution the court to refrain from doing so on remand.

**III**

[¶ 29] We reverse the summary judgment and remand.

[¶ 30] Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Jay A Schmitz, D.J.

Gerald W. VandeWalle, C.J.

[¶ 31] The Honorable Jay A. Schmitz, D.J., sitting in place of Kapsner, S.J., disqualified.

[¶ 32] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision.