# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 53

Allan Lenertz,
Plaintiff and Appellant

v.

City of Minot N.D.,
Defendant and Appellee

No. 20180153

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Gary H. Lee, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by Crothers, Justice.

Robert S. Rau, Minot, ND, for plaintiff and appellant.

Randall J. Bakke (argued) and Bradley N. Wiederholt (on brief), Bismarck, ND, for defendant and appellee.

**Crothers, Justice.**

[¶1]    Allen Lenertz appeals from a judgment dismissing his claim for inverse condemnation against the City of Minot and awarding the City costs and disbursements.  The district court did not err in ruling Lenertz established only a partial taking of his property, did not abuse its discretion in denying his proposed expert witness's testimony and did not err in granting the City judgment under N.D.R.Civ.P. 50.  The court did abuse its discretion in awarding the City costs and disbursements.  We affirm in part, and reverse in part.

I

[¶2]    Between 2013 and 2014 the City installed a paved street and upgraded the storm water system adjacent to Lenertz's commercial property in southwest Minot. Lenertz's property subsequently suffered three flooding events.  In 2016 Lenertz sued the City for inverse condemnation, alleging the City's actions in constructing the street and storm sewer system caused past and future flooding of his property and resulted in a total taking of his property.  The City denied a taking occurred and raised affirmative defenses.

[¶3]    In March 2018, the district court held a trial, which included a jury solely to decide damages.  Near the conclusion of Lenertz's case in chief, but before receiving testimony from appraiser Daniel Boris, his expert on damages, the court found the evidence established only a partial taking of Lenertz's property.  Because Boris's proffered opinion was essentially that the commercial property's current market value constituted the full measure of damages to the property, rather than the property's diminution of value, the court allowed Lenertz to make an offer of proof on damages before deciding whether to dismiss under N.D.R.Civ.P. 50.

[¶4]    Without the jury present, the district court heard Boris testify for Lenertz's offer of proof.  The court thereafter concluded Boris's valuation of the property was contrary to the law and would not assist the jury on damages.  The court granted the City's motion for a judgment as a matter of law under N.D.R.Civ.P. 50, and explained:

> "THE COURT:   Right now, Mr. Bakke, I'm taking your comments and your request is basically a Rule 50 motion as for judgment — a directed verdict; correct?
> "MR. BAKKE:  Correct, Your Honor.
> "THE COURT:  And Mr. Rau, I've heard from you. Mr. Boris was your last witness?
> "MR. RAU:  Yes, sir.
> "THE COURT:  The law in the State of North Dakota is, and I think it's the law in the entire nation that no property shall be taken or damaged for public use without just compensation.  That's Article I, Section 16 of the North Dakota Constitution.  An inverse condemnation occurs when a public project proximately causes a taking or a damaging to private property.  I think that's pretty much black letter law.  And at this stage, the Rule 50 stage, I think I mentioned this yesterday, on a prima facie basis I think Mr. Lenertz has established that an inverse condemnation may have occurred.
>
> "Now that doesn't mean that I'm finding it's a final fact.  I mean Mr. Bakke hasn't had a chance to put his defenses in yet.  But just at this Rule 50 phase, I think Mr. Rau and Mr. Lenertz have established a prima facie case for a taking.  There was no flooding before the project, now there is.
>
> "It's going to rain again.  We all know that. It will probably rain two inches again.  I mean it's going to happen probably again, these torrential rains.  I mean we have them once or twice a summer.  May go two or three years without any, but then we may have a year where there's three or four.  This happens.  So I think without—you know, it's probably going to happen again.  Whether that's inevitable or not, again, that would await further defense of defense.  But for a prima facie case, I think you've established that yes it's going to rain again and it will probably rain this much.
>
> "The design appears to have been defective. I think Mr.—from what I understand Mr. Hruby's testimony or AE2, or whatever it is, that a review of the design believed that the design had some flaws.  Again, so on a prima facie case, that's more evidence of the taking—or the inverse condemnation.

"And lastly, the remedial efforts themselves, the fact that you had to take remedial efforts I think supports the fact that there was a design flaw, and the remedial efforts appear not to be working. So on a prima facie basis, again, I'm not saying this is an absolute because Mr. Bakke hasn't had a chance to put his defense in yet. But on a prima facie basis, I believe that Mr. Lenertz has established that an inverse condemnation may have occurred.

"An inverse condemnation may be a taking of the entirety, or it may be a partial taking. A taking of the entirety is in fact a taking of everything. There's nothing left. So for example, in the usual course if you have a road project and the road comes through and they take five acres, the five acres are completely gone and the damages are the total fair market value of those five acres. There's nothing left. It's taken from the owner forever, and the owner has no further interest in the property. That hasn't occurred here. This is not a total taking.

"A partial taking is a short-term, or temporary interference with the landowners use and enjoyment of the property. That's what I was able to discern from my research in that. That a partial taking is a short-term, temporary interference with the landowners use and enjoyment of a property. And this sort of intermittent flooding I think would satisfy that definition. In this case, I would find as a matter of law that there was a partial taking only. And I'd let it go to the jury on a question of a partial taking.

"And it is a partial taking, because Mr. Lenertz still has the property. He still has it's use, he still is conducting business there just as before. He still is generating income. The flooding is temporary, short-term events. So this is at most, a partial taking.

"Now having made that as a determination, Mr. Lenertz would be entitled to what's called just compensation for that partial taking. Just compensation for the taking of the entirety is the fair market value of everything that is taken. It's gone. That's what just compensation for a total taking is. For a partial taking, just compensation is damages. And the just compensation for a partial taking is the difference between the fair market value of the property before the partial taking and the fair market value of the property after the taking. It's the diminution in value, which even Mr. Boris agrees is the proper measure, the diminution in value.

"To support that finding of diminution in value, Mr. Lenertz has offered Mr. Boris as an expert on the issue of damages. Now I understand that North Dakota is not a [*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)] state. We're not a [*Daubert*] state. Our rules of evidence allow for a broad use of expert testimony. And an expert must have—but there's two steps to this broad use of the expert testimony.

"Step number one: the expert must have specialized knowledge or skill in a specific area. I think Mr. Boris certainly has the requisite credentials. But the second step of the use of expert testimony in North Dakota, the second step is: whether the testimony will assist the trier of fact. And in this case, I don't believe Mr. Boris' testimony is of any assistance to the trier of fact. Mr. Boris states that the property—a property that suffers only intermittent, temporary flooding, which has not [a]ffected it's use, it's not [a]ffected its occupancy, it's not [a]ffected the income, that that property has no value. Hence, his diminution in value, he states the property is worthless. This is not of any assistance to the trier of fact.

"And following in on some of Mr. Bakke's comments on this, he states his diminution in value is derived by the fact that it would be the difference between the price of the property and the cost of the cure. I don't think that's the proper way to determine diminution in value. The diminution in value is the fair market value before the property and the fair market value after the property. It's not what would it cost to repair it and if the repairs cost more, th[e]n it's worth nothing. That's not diminution in value.

"That's number one. Number two, by his own admission he says[, ']I am not an engineer, I am only guessing that it would cost this much to repair the property.['] He has no basis for the opinion that the cost of repair would be more than the value of the property. So not only is he using an improper measure of damages, he has no basis for his statements because he doesn't know. He fully admits.

"I actually wrote this down. His comments were 'what little I know about this', then he says 'my guess you be' [sic]. That was in direct testimony. That's not a basis for an expert opinion. An expert has to have some basis of knowledge. So to say that the cost of repairs would be more than a million dollars, he has no basis for that. So even in his own opinion he doesn't have any basis to support that opinion that the cost—even if you took the idea that the diminution in value is what the cost of repairs would be, he has no basis for making that as an estimate.

"But I don't believe that that's even a fair way to do it. As he said further, he said, and again, following on Mr. Bakke's comments, I wrote them down. He said what would have to happen in a sale situation?, you'd have to disclose the flooding. What happens then? The buyer walks away, or you have to discount the value in order to effectuate the sale. That discount in value is the diminution in value in my mind.

"What is that, is it a percentage? Is it a dollar amount? What is it. We have nothing. Mr. Boris offers nothing to give us what that discount would be. That discount is the diminution in value. Mr. Boris

4

didn't do this. So his testimony is not useful to the jury. It does not help the jury come to a determination of just compensation.

"It is Mr. Lenertz's burden of proof to show what the diminution of value would be, and he has offered nothing. The failure of proof on the diminution in value requires the Court to dismiss and to grant judgment in favor of the City.

"Mr. Bakke, you'll prepare the appropriate order and order for judgment?

"MR. BAKKE: Yes, Your Honor.

"MR. RAU: Will the Court be writing a written opinion on that?

"THE COURT: No, my opinion is as I stated here in Court. I think my comments are sufficiently detailed that my reasoning is readily available."

[¶5] On April 3, 2018, the district court entered its order for judgment. An amended judgment was entered on May 23, 2018, dismissing Lenertz's inverse condemnation action with prejudice and awarding the City costs and disbursements of $3,070.

II

[¶6] Rule 50(a), N.D.R.Civ.P., governs the district court's decision whether to grant a motion for judgment as a matter of law and provides:

"(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>    (A) resolve the issue against the party; and
>    (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
"(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the moving party to the judgment."

[¶7] "A party moving for judgment as a matter of law 'is, in effect, claiming that the evidence is insufficient to create a question of fact for the jury.'" *Bjorneby v. Nodak Mut. Ins. Co.*, 2016 ND 142, ¶ 7, 882 N.W.2d 232 (quoting *Okken v. Okken*,

5

325 N.W.2d 264, 267 (N.D.1982)). The district court's decision on a motion "under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion." *Minto Grain v. Tibert*, 2009 ND 213, ¶ 7, 776 N.W.2d 549 (internal citation and quotation marks omitted).

[¶8]     "[W]hether or not the evidence is sufficient to create a question of fact for the jury is itself a question of law to be decided by the trial court." *Bjorneby*, 2016 ND 142, ¶ 7, 882 N.W.2d 232 (quoting *Okken*, 325 N.W.2d at 267). The court may grant judgment as a matter of law when it decides the evidence does not raise a factual issue to be decided by the jury. *Id.* The district court's decision on a motion for judgment as a matter of law is fully reviewable on appeal. *Id.*; *Minto Grain*, 2009 ND 213, ¶ 7, 776 N.W.2d 549. In deciding whether the district court erred in granting judgment as a matter of law, this Court examines the trial record and applies the same standard as the district court was initially required to apply. *See Minto Grain*, at ¶ 8.

III

[¶9]     Lenertz argues the district court erred in concluding he suffered only a "temporary" taking, rather than a total taking or damaging of his property.

[¶10]   In *Bala v. State*, 2010 ND 164, ¶ 8, 787 N.W.2d 761, we discussed the nature of an inverse condemnation action under state law:

> "Article I, § 16 of the North Dakota Constitution . . . declares that '[p]rivate property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner.' '"Inverse condemnation actions are a property owner's remedy, exercised when a public entity has taken or damaged the owner's property for a public use without the public entity's having brought an eminent domain proceeding."' *Aasmundstad v. State*, 2008 ND 206, ¶ 15, 763 N.W.2d 748 (quoting *Knutson v. City of Fargo*, 2006 ND 97, ¶ 9, 714 N.W.2d 44). 'To establish an inverse condemnation claim, a property owner must prove a public entity took or damaged the owner's property for a public use and the public use

6

was the proximate cause of the taking or damages.' *Aasmundstad*, at ¶ 15."

*See also Irwin v. City of Minot*, 2015 ND 60, ¶¶ 6-7, 860 N.W.2d 849. Whether a taking of private property for public use occurred is a question of law, fully reviewable on appeal. *City of Minot v. Boger*, 2008 ND 7, ¶ 16, 744 N.W.2d 277; *see also Wilkinson v. Bd. of Univ. & Sch. Lands*, 2017 ND 231, ¶ 22, 903 N.W.2d 51; *Irwin*, at ¶ 6; *Bala*, at ¶ 8.

[¶11] Lenertz asserts the evidence at trial, including from the City's expert, demonstrates his land has been permanently invaded and damaged by water from adjoining tracts because of the City's storm sewer and street improvement project. He contends the damaging of his property is frequent, continuing without remediation and a permanent condition, rather than a "temporary" taking, since the condition has not been rectified.

[¶12] The City concedes the evidence supported a prima facie case of a "partial taking" of Lenertz's property. But the City contends Lenertz's assertion of a "total taking" of his property conflicts with all the evidence presented at trial. The City asserts the court received substantial documentary and testimonial evidence establishing the property has economic value despite the three flood events and despite the assertion similar events could occur. The City also contends a preponderance of the evidence shows Lernertz did not lose the entire value of the property because of flooding and, at worst, only a partial taking occurred. The City argues the court correctly decided Lenertz only made a prima facie showing of less than a total taking, correctly terming it a "partial taking."

[¶13] This Court has discussed the distinction between "permanent and temporary injuries from diversion of excess water onto land," noting that while "the general rule that recurring trespasses give rise to repeated actions to recover for successive damage[,] . . . the general rule is not controlling when a party elects to treat its damages as permanent rather than temporary and recurring." *Hager v. City of Devils Lake*, 2009 ND 180, ¶ 19, 773 N.W.2d 420 (quoting *Peacock v. Sundre Twp.*, 372 N.W.2d 877, 879 (N.D. 1985)). In *Hager*, the landowners brought an action for

7

inverse condemnation and other claims, alleging a permanent storm sewer system caused dispersal of water on the their property and "the flooding ha[d] caused *an actual physical taking of a part of the larger parcel*." *Hager*, at ¶¶ 23-24 (emphasis added). We concluded that "when water is diverted onto property by construction or operation of a permanent structure, there is only one cause of action, successive suits may not be maintained, and the statute of limitations begins to run when harm first occurs." *Id.* at ¶ 24. While Lenertz suggests the court erred in concluding he suffered a "temporary" taking, we construe the court's discussion as holding the evidence at trial only established a prima facie taking of a part of his property, *i.e.*, a partial taking.

[¶14] In this case, the parties do not dispute the district court held Lenertz established a prima facie case the City's construction of road and storm sewer project caused a taking of his property. Rather, they dispute whether the evidence showed the City's taking of his property was partial or total. Although Lenertz testified he sustained damages from the flooding events, he did not offer specific evidence of those damages. He also denied personal property loss or damage when one building had taken on water on one occasion. However, as asserted by the City evidence showed his property continued to have economic value despite the flood events. Evidence established the buildings were occupied before and after the flood events, he did not lose a tenant or decreased rents because of flooding, he earned an average of about $85,000 per year in gross rental income, he did not testify he lost an offer to purchase the property because of flooding, he did not establish any building or personal property damage because of flooding, and the flood waters dissipated after the flood events in June 2014 and 2015. The evidence does not establish a total taking or loss of the entire property value, but shows only a potential partial taking or damaging of his property.

[¶15] Evidence supports the district court's conclusion that Lenertz established a prima facie case of a partial but not a total taking of his property.

[¶16] Lenertz argues the district court improperly excluded his expert witness testimony.

[¶17] Rule 702, N.D.R.Ev., provides the general rule governing expert testimony:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*."

(Emphasis added.)  The district court has broad discretion whether to allow expert witness testimony, and its decision will not be reversed on appeal unless it abused its discretion. *Cass Cty. Joint Water Res. Dist. v. Erickson*, 2018 ND 228, ¶ 19, 918 N.W.2d 371; *State v. Hunter*, 2018 ND 173, ¶ 44, 914 N.W.2d 527.  "The court has broad discretion to determine whether a witness is qualified as an expert and whether the testimony will assist the trier of fact."  *Hunter*, at ¶ 44. Rule 702 "envisions generous allowance of the use of expert testimony if the witness has some degree of expertise in the field in which the witnesses to testify."  *Hunter*, at ¶ 45.  However, "[t]he probative effect and admissibility of evidence is a matter for the trial court's discretion."  *Erickson*, at ¶ 19.

[¶18] Lenertz argues that, after he made his offer of proof, the district court found an inverse condemnation may have occurred, the project design appeared to be defective, and remedial efforts appeared not to be working.  He argues, however, the court erred in concluding his expert's testimony would not assist the trier of fact.  He contends the court abused its discretion under N.D.R.Ev. 702 by confusing "usefulness" of the expert's testimony with "weight and credibility."  He argues the jury should have heard the expert's opinion on the measure of damage sustained to his property.

[¶19] Lenertz also argues N.D.C.C. § 32-15-22(3) limits or overrides the district court's discretion in admitting evidence, and requires a jury to hear legal testimony offered by any of the parties, "[i]f the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such

damages." He asserts the proper metric for just compensation under the statute is the measurement of "damages," not the loss of "value."

[¶20] Lenertz further asserts a landowner is entitled to consequential damages and is not limited to a decrease in market value. He contends his expert appropriately used the metric of "damage" in formulating his opinion, and opined a complete damaging of his property. Lenertz contends both he and his expert used acceptable methods of determining the "damages" suffered. He contends Boris's opinion that uncontrollable flooding leads to a total loss in market value presents a fact question which goes to weight and credibility rather than admissibility of the evidence.

[¶21] The City responds that the evidence showed the property had substantial value and that the expert's testimony improperly ignored or contradicted the real value; the expert's testimony about the property being worthless conflicted with his other testimony on the correct measure of damages; and the expert re-tooled proffered testimony about the diminishment in value being the cost to repair, conflicting with North Dakota law. The City asserts Boris's testimony was unreliable because no evidence was presented to support a total loss of marketability and because it used a 2016 valuation date rather than the date of the taking.

[¶22] Our state constitutional provision is, in some respects, broader than its federal counterpart because the state provision "was intended to secure to owners, not only the possession of property, but also those rights which render possession valuable." *Wild Rice River Estates, Inc. v. City of Fargo*, 2005 ND 193, ¶ 16, 705 N.W.2d 850 (quoting *Grand Forks-Traill Water Users, Inc. v. Hjelle*, 413 N.W.2d 344, 346 (N.D. 1987)). Generally, "[t]he party claiming damages in condemnation proceedings has the burden of proof to establish the amount of damages incurred." *Erickson*, 2018 ND 228, ¶ 12, 918 N.W.2d 371 (citing *Dutchuk v. Bd. of Cty. Comm'rs, Billings Cty.*, 429 N.W.2d 21, 23 (N.D. Ct. App. 1988)). "Where flooding has resulted in a taking, the general rule is that the compensation due is the difference in the value of the land before and after the flooding." Julius L. Sackman, 4 *Nichols on Eminent Domain* § 13.16[5], at 13-217 (2018). "If the flooding results in a total and permanent taking,

10

the measure of compensation is the fair market value of the land." *Id.*; *see also City of Bristol v. Tilcon Minerals, Inc.*, 931 A.2d 237, 249 (Conn. 2007) ("If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter."). Nevertheless, "[t]he trial court has discretion in deciding the admissibility of evidence about the value of the land, including determining the relevance of evidence about the value and comparability of other properties." *Erickson*, at ¶ 8; *see also* N.D.R.Ev. 402 ("Irrelevant evidence is not admissible.").

[¶23]  Here, the district court had broad discretion under N.D.R.Ev. 702 to decide whether to admit the expert Boris's testimony.  Contrary to Lenertz's assertion N.D.C.C. § 32-15-22(3) "overrides" the district court's discretion to admit evidence, the court provided its extensive reasons and analysis for refusing the testimony.  Consistent with his appraisal report, Boris opined the property should have been valued at $750,000, but was worthless, because of recurring flooding.  The court explained it refused to allow Boris to testify because his valuation was at odds with the Court's conclusion only a "partial taking" occurred.  The court reasoned that because Lenertz did not establish a total taking of his property, the diminution in value was not total and Boris's testimony would not assist the jury in deciding damages.  The jury would be left to speculate as to the amount of damages.

[¶24]  On this record, the district court did not abuse its discretion in refusing to admit Lenertz's proffered expert testimony.


V

[¶25]  Lenertz argues the district court improperly dismissed his claims when the record contained evidence of damages sustained by him.  The district court's decision to grant a motion for judgment as a matter of law is fully reviewable, and we examine the trial record and apply the same standard as the district court initially applied.

11

*Bjorneby*, 2016 ND 142, ¶ 7, 882 N.W.2d 232; *Minto Grain*, 2009 ND 213, ¶¶ 7-8, 776 N.W.2d 549.

[¶26]  Lenertz argues the district court erred in deciding there was no evidence regarding damages and relies on his own testimony at trial as to his land's value.  He asserts there was no adequate remediation, he testified on value and his loss, and he placed a value on the tract.  *See Schultz v. Schultz*, 2018 ND 259, ¶ 19, 920 N.W.2d 483 ("An owner of property may testify as to the property's value.").  He contends the City's attorney's argument is not evidence or proof and the only evidence of damages was from him as the landowner.  He contends that because some damage evidence was presented, the jury had a range of values and the court's judgment as a matter of law was inappropriate.

[¶27]  Here, the district court held judgment as a matter of law was appropriate because no total taking of the property occurred, and because Lenertz did not proffer evidence of damage less than a total devaluation.  The evidence established the property had been at most partially taken or damaged by the City's actions.  The evidence did not establish a total devaluation of the property.  While Lenertz testified he suffered damages, he did not provide more than a general statement about his damages.

[¶28]  Because Lenertz only proffered evidence of total devaluation rather than specific damages, the district court properly granted judgment as a matter of law under N.D.R.Civ.P. 50.  The district court did not err in holding the evidence was insufficient to have the jury decide damages.


VI

[¶29]  Lenertz argues the district court erred in assessing costs against Lenertz because N.D.C.C. § 32-15-32 precludes the City's recovery.

[¶30]  Section 32-15-32, N.D.C.C., provides:

> "The court may in its discretion award to *the defendant* reasonable actual or statutory costs or both, which may include interest from the

time of taking except interest on the amount of a deposit which is available for withdrawal without prejudice to right of appeal, costs on appeal, and reasonable attorney's fees for all judicial proceedings. If *the defendant* appeals and does not prevail, the costs on appeal may be taxed against *the defendant*. In all cases when a new trial has been granted upon the application of the defendant and *the defendant has failed upon such trial to obtain greater compensation* than was allowed *the defendant* upon the first trial, the costs of such new trial shall be taxed *against the defendant*."

(Emphasis added.)

[¶31] Here, the district court awarded costs and disbursements to the City, as the prevailing party, under N.D.C.C. §§ 28-26-02 and 28-26-06. Lenertz argues N.D.C.C. § 32-15-32 only allows costs to be assessed against the taking governmental entity and the court ignored the law by allowing costs to be assessed against the landowner. The City responds that N.D.C.C. §§ 28-26-02 and 28-26-06 permit a prevailing party to recover costs and disbursements. The City asserts it prevailed at trial and a political subdivision that successfully defends against a landowner's meritless inverse condemnation claim should be able to recover its costs and disbursements.

[¶32] Generally, "[a]n award of attorney fees and costs in an eminent domain action is governed by N.D.C.C. § 32-15-32." *Erickson*, 2018 ND 228, ¶ 28, 918 N.W.2d 371. "Section 32-15-32, N.D.C.C., gives the court discretion to award costs and attorney fees to the defendant in an eminent domain action." *Erickson*, at ¶ 28. "The statute says nothing about assessing trial court costs against the defendant." *City of Jamestown v. Leevers Supermarkets, Inc.*, 552 N.W.2d 365, 375 (N.D. 1996). Section 32-15-18(2), N.D.C.C., specifically provides that a complaint for eminent domain under N.D.C.C. ch. 32-15 must contain: "The names of all owners and claimants of the property, if known, or a statement that they are unknown, *who must be styled defendants*." (Emphasis added.) From this language, N.D.C.C. § 32-15-18(2) makes clear that references to "the defendant" in N.D.C.C. § 32-15-32 mean the "owners and claimants of the property."

13

[¶33]   In *Gissel v. Kenmare Twp.*, 512 N.W.2d 470, 475-77 (N.D. 1994), this Court held the generalized cost-shifting provisions of N.D.R.Civ.P. 68(a) do not apply and N.D.C.C. § 32-15-32 specifically governs the award of costs in an inverse condemnation action under N.D.C.C. ch. 32-15.  *See also Arneson v. City of Fargo*, 331 N.W.2d 30, 38-39 (N.D. 1983) ("[W]hen a landowner brings an action in inverse condemnation through which he receives a compensation for the taking or damaging of his property for public use it is proper for the trial court to award, in its discretion, reasonable costs and attorney's fees under [N.D.C.C. §] 32-15-32.").  In *Leevers Supermarkets*, 552 N.W.2d at 375, this Court held, for like reasons, the cost and fee provisions of N.D.R.Civ.P. 54(e) and N.D.C.C. § 28-26-06(5) do not apply to the eminent domain proceeding under N.D.C.C. ch. 32-15.  In *Hager*, 2009 ND 180, ¶ 56, 773 N.W.2d 420, we assumed but did not decide N.D.C.C. § 32-15-32 precludes an award of costs against a plaintiff landowner in an inverse condemnation action, but nonetheless held an award of costs under N.D.R.Civ.P. 54(e) and N.D.C.C. § 28-26-06 was allowed because the landowners also joined tort claims with their inverse condemnation claims.  In this case Lenertz only alleged a claim for inverse condemnation.

[¶34]   On the basis of our prior cases, we hold for similar reasons that N.D.C.C. § 32-15-32 precludes an award of costs against a plaintiff landowner in an inverse condemnation action brought under N.D.C.C. ch 32-15.  Therefore, the district court abused its discretion in awarding the City its costs and disbursements under N.D.C.C. §§ 28-26-02 and 28-26-06.  We reverse the judgment to the extent it orders Lenertz to pay the City's cost and disbursements.

VII

[¶35]   We have considered Lenertz's remaining arguments and determine they are without merit or unnecessary to our decision.  The judgment is affirmed in part, and reversed in part.

[¶36]   Daniel J. Crothers
         Jon J. Jensen

14

Gerald W. VandeWalle, C.J.

I concur in the result.
Lisa Fair McEvers

**Tufte, Justice, concurring in part and dissenting in part.**

[¶37] I concur in the majority opinion except as to Part VI. Respectfully, I do not agree that the statement "[t]he court may in its discretion award to the defendant reasonable actual or statutory costs or both," N.D.C.C. § 32-15-32, should be read to preclude an award of costs to the defendant here. The result reached by the majority is not consistent with the unambiguous language enacted into statute. The majority concludes that N.D.C.C. § 32-15-32 precludes an award of costs to a governmental defendant by reading N.D.C.C. § 32-15-18(2) to redefine "defendant" as the plaintiff landowner when the suit is one of inverse condemnation. Lenertz's complaint did not style the City of Minot as the plaintiff as required by § 32-15-18(1), nor did he style himself as the defendant of his own complaint as apparently required by § 32-15-18(2). It would be an unusual complaint that is served and filed by a "defendant." A "defendant" is "[a] person sued in a civil proceeding." *Black's Law Dictionary* 508 (10th ed. 2014). A "plaintiff" is "[t]he party who brings a civil suit in a court of law." *Id.* at 1336. During the time period when § 32-15-32 was enacted, our statutes defined these terms similarly: "There shall be in this state but one form of action . . . denominated a civil action. In such action the party complaining shall be known as the plaintiff and the adverse party as the defendant." N.D.R.C. § 32-0109 (1943).

[¶38] As accurately described by the majority, we have explained that inverse condemnation claims arise under Chapter 32-15, which speaks only in terms of ordinary direct condemnation. The result reached by the majority likely reaches the policy outcome the Legislative Assembly would have desired had it enacted legislation to address a request for costs by a prevailing municipality defendant in an inverse condemnation suit. Here the Court interprets plain statutory text to mean the opposite of its ordinary meaning. In the context of the chapter, the Legislative

15

Assembly may well have intended the ends of awarding costs to landowners, but it enacted statutory means that require the opposite. I do not think it is an absurd result to award costs to a prevailing municipality under these circumstances, so I would apply the statutory language as enacted and not follow Alice through the looking glass to a place where a word can mean its opposite.

> "When I use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean—neither more nor less." "The question is," said Alice, "whether you can make words mean so many different things." . . . "That's a great deal to make one word mean," Alice said in a thoughtful tone. "When I make a word do a lot of work like that," said Humpty Dumpty, "I always pay it extra."

Lewis Carroll, *Through the Looking-Glass* (1871).

[¶39]  I respectfully dissent as to part VI.

[¶40]  Jerod E. Tufte